CATHOLIC ACTION OF HAWAII/PEACE EDUCATION PROJECT et al., Plaintiffs-Appellants,

v.

Harold BROWN, Secretary of Defense, et al., Defendants-Appellees.

C.A. No. 79–4330.

United States Court of Appeals, Ninth Circuit.

Submitted Jan. 16, 1980.

Decided July 17, 1980.

Rehearing and Rehearing En Banc Denied Oct. 9, 1980.

---

Nancy Stearns, Center for Constitutional Rights, New York City, for plaintiffs-appellants.

Martin Green, Washington, D. C., argued, Walter M. Heen, U. S. Atty., Elliot Enoki, Asst. U. S. Atty., Honolulu, Hawaii, on brief, for defendants-appellees.

Before MERRILL, SCHROEDER and FLETCHER, Circuit Judges.

MERRILL, Circuit Judge:

This action was brought by appellants, several Hawaii based environmental groups and individuals concerned with the protection of the environment. They seek to require the United States Navy to file an environmental impact statement (EIS), pursuant to the National Environmental Policy Act (NEPA), and to comply with other federal statutes protecting endangered species and historic sites in connection with alleged plans to store nuclear weapons at the West Loch branch of the Lualualei naval magazine on the island of Oahu, Hawaii.

The West Loch facility has, since 1959, been used for handling and storage of ammunition. It is located one mile from the final approach to a major runway at the Honolulu International Airport and in close proximity to airports at Hickham Airforce Base and Barber's Point Naval Air Station.

In 1975, the Navy prepared an environmental impact assessment (EIA) of the environmental consequences which might result from the planned transfer to West Loch of weapons being stored at Waikele branch of the Lualualei magazine. The assessment concluded that the construction of the magazines and buildings to accommodate the relocation of weapons would have no significant impact on the environment beyond that of the weapons previously stored there. Consequently, it concluded that no EIS was necessary, and none was prepared. However, the EIA did not take into consideration the possibility that nuclear weapons might be stored at the new facility; only conventional weapons had previously been stored at West Loch.

In March, 1977, a contract was let for a portion of the construction dealt with in the EIA. In April, 1978, a contract was let for the balance.

In 1978, the Navy prepared a candidate environmental impact statement (CEIS) entitled "Nuclear Aspects of Naval Weapons Systems Storage." It dealt generally, without reference to any specific site, with the hazards connected with storage of nuclear warheads and concluded that "The handling, storage and transportation of nuclear weapons present no hazards to the environment." It did not discuss the likelihood or potential effects of nuclear explosion or detonation resulting from sabotage or an accident caused by crash of an airplane into a storage facility.

In March, 1978, this action was brought seeking an injunction against the building of the new facilities until an EIS had been filed. A preliminary injunction was sought and denied. The new facilities have now been completed. It is stipulated that the new construction is capable of maintaining and storing nuclear weapons. Navy regulations, in the interest of national security, will permit it neither to admit nor deny that plans exist to store nuclear weapons there.

The Okiokiolepe Fishpond, listed on the National Register of Historic Places, is located 750 feet from the new storage site. It is virtually the only fishpond left of many that once were located in the Pearl

Harbor area. The Hawaiian stilt is a rare waterbird whose habitat is in the West Loch area.

It is the contention of appellants that the EIA does not satisfy the requirements of NEPA, in that it has ignored four critically important environmental factors: (1) The risk of nuclear accidents; (2) The enhancement of that risk by the physical proximity of the airports; (3) The effects of any nuclear accident upon the surrounding population and environment of Hawaii; and (4) The effects of continual low-level radiation from the storage of the weapons near populated areas. It is contended that the CEIS, not being site specific, can supply none of these factors.

The district court concluded that the West Loch project was major federal action significantly affecting the environment, and that the defendants were required to comply with NEPA "to the fullest extent possible." It concluded, however, that the Navy had complied so far as was possible, given certain national security provisions of the Atomic Energy Act and certain Navy regulations relative to the classification of nuclear weapons. Appellants' case was dismissed, and this appeal followed.

The Navy contends in its brief on appeal: " * * * the Atomic Energy Act, and the various Department of Defense and Navy directives which implement that Act, forbid the disclosure of information relating to the presence of nuclear weapons at military bases. There is simply no way that the Department of the Navy can on the one hand preserve the secrecy required by the Atomic Energy Act with respect to the presence or absence at West Loch of nuclear weapons, and on the other hand prepare and make available to the public a statement with respect to the impact upon the environment of the storage of nuclear weapons at West Loch. Compliance with one statute precludes compliance with the other."

Accepting *arguendo* that the Atomic Energy Act and the directives which implement it forbid any disclosure of information regarding the presence of nuclear weapons

at a military base, we cannot agree that this precludes preparation of an EIS with respect to the storage of nuclear weapons at West Loch.

An EIS, to be sufficient, must deal not only with the environmental consequences of the original construction involved in the project, but with the environmental consequences of the operation of the facility. *Concerned About Trident v. Rumsfeld*, 555 F.2d 817 (D.C.Cir.1977). If operation involves a choice between alternatives, the decision maker must be so informed as to the consequences of each alternative that a knowledgeable choice can be made. Here, the Secretary must be informed as to the consequences of his choice of weapons to be stored. If nuclear storage is a potential choice, he must be adequately prepared to make such choice when the time for decision arrives.

In the present case it is stipulated that the West Loch facilities are capable of storing nuclear weapons. The public therefore must assume that at least the possibility exists that nuclear weapons, to the extent of the apparent capacity of the facility (assuming that capacity would be apparent to a knowledgeable observer), will be stored at West Loch. Thus, an EIS dealing with the consequences of such possibility would reveal nothing with respect to the likelihood of storage of which the public is not already aware. Such a process of informing the decision maker need not imply that the decision has already been made or what the decision is; the Secretary need never reveal the fact that a decision has been made or what it is. However, the public must receive some assurance, particularly in a situation as potentially catastrophic as this one, that when the decision is made the decision maker will have been adequately informed as to the environmental consequences of each alternative, here including the potential consequences of the storage of nuclear weapons at this particular site. Consideration of the four environmental factors specified by appellants as being critically important is essential if the decision maker is to be adequately prepared when the time for decision respecting nuclear storage arrives.

While we recognize that specific information regarding the number and type of nuclear weapons to be stored at West Loch cannot be revealed to the public, this should not preclude preparation of an EIS, available to the public, generally assessing the impact of such storage. Further, since the EIS in important respects will be hypothetical (hypothesizing, without conceding, that the facility will be put to the use for which it has been made capable), factual information as to the consequences of storage to any specific extent can be based on a series of hypotheses covering the range of options which the facility has openly presented to the Secretary.[1]

We note further that the informing of the decision maker is not the only result flowing from the filing of an EIS pursuant to NEPA. The public also is informed as to the consequences of action being sought by governmental agencies. While courts are reluctant to second-guess an informed decision maker as to what is or is not in the public interest, an informed electorate need not be reluctant. For this reason, it seems to us to be important that the public be informed where, as here, disclosure can be so conditioned as not to impinge upon national security. Otherwise, agencies would be able to escape the consequences of the political process as it may operate on an unpopular decision by concealing from the public the fact that such a decision has been or may be made.

With respect to the Okiokiolepe Fishpond the court below concluded that the construction and use of the new West Loch storage facility would have no impact on the fishpond or on the rare Hawaiian stilt, whose habitat it is. The court so concluded because it accepted the Navy's contention that only the impact of storing additional conventional weapons at West Loch could be considered. We leave it for the district court to determine the effect of § 106 of the Historic Preservation Act and of § 7 of the Endangered Species Act in light of the information contained in the EIS which is prepared by the Navy.

Finally, appellants contend that they should be permitted to amend their complaint on appeal to allege a denial of Fifth Amendment due process. Appellants may advance this contention to the district court on remand.

We conclude that while the district court correctly held that the West Loch project was major federal action, it erred in holding that the Navy has complied with NEPA to the fullest extent possible. We conclude that the EIA and the CEIS provided by the Navy are inadequate and that an EIS is required under the provisions of NEPA.

Reversed and remanded for further proceedings. We leave to the district court the question whether injunctive relief is proper at this time.

---

1. In addition to public disclosure through a hypothetical EIS, the Navy's own regulations recognize the fact that the classified nature of certain essential information—here, the specific number and type of weapons to be stored at West Loch—does not excuse the private disclosure of such information to the Secretary by way of an EIS.

"The fact that a proposed action is of a classified nature does not relieve the proponent of the action from complying with the requirements of this Part. Environmental statements, both draft and final, shall be prepared, safeguarded and disseminated in ac- cord with the requirements applicable to classified information * * *. When feasible, these statements shall be organized in such a manner that classified portions can be included as annexes, so that the unclassified portions can be made available to the public."

32 C.F.R. § 214.8(i). While such classified matter need not be publicly disclosed, the public at least is entitled to the assurance that the Secretary has been privately informed in that area and that such matters will be taken into consideration by him in reaching any decision.