WEINBERGER, SECRETARY OF DEFENSE, ET AL. *v.*
CATHOLIC ACTION OF HAWAII/PEACE
EDUCATION PROJECT ET AL.

No. 80–1377.   Argued October 13, 1981—Decided December 1, 1981

REHNQUIST, J., delivered the opinion of the Court, in which BURGER, C. J., and WHITE, MARSHALL, POWELL, STEVENS, and O'CONNOR, JJ., joined. BLACKMUN, J., filed an opinion concurring in the judgment, in which BRENNAN, J., joined, *post*, p. 147.

*Solicitor General Lee* argued the cause for petitioners. With him on the briefs were former *Solicitor General McCree, Assistant Attorney General Dinkins, Deputy Solicitor General Claiborne, Harlon L. Dalton, Peter R. Steenland, Jr., Raymond N. Zagone,* and *Martin Green.*

*Nancy Stearns* argued the cause for respondents. With her on the brief was *Robert L. Boehm.**

JUSTICE REHNQUIST delivered the opinion of the Court.

The Court of Appeals for the Ninth Circuit held that § 102(2)(C) of the National Environmental Policy Act of 1969 (NEPA), 83 Stat. 853, 42 U. S. C. § 4332(2)(C), requires the Navy to prepare and release to the public a "Hypothetical Environmental Impact Statement" with regard to the opera-

---

*\*Ronald A. Zambrun* and *Raymond M. Momboisse* filed a brief for the Pacific Legal Foundation as *amicus curiae* urging reversal.

*Ronald J. Wilson* filed a brief for the National Resources Defense Council, Inc., et al. as *amici curiae* urging affirmance.

*Doron Weinberg* filed a brief for the Fellowship of Reconciliation et al. as *amici curiae.*

tion of a facility capable of storing nuclear weapons. *Catholic Action of Hawaii/Peace Education Project* v. *Brown*, 643 F. 2d 569, 572 (1980). Because we conclude that the "Hypothetical Environmental Impact Statement" is a creature of judicial cloth, not legislative cloth, and that it is not mandated by any of the statutory or regulatory provisions upon which the Court of Appeals relied, we reverse its decision.

The facts relevant to our decision are not seriously controverted. Pursuant to a decision by the Navy to transfer ammunition and weapons stored at various locations on the island of Oahu, Hawaii, to the West Loch branch of the Lualualei Naval Magazine, the Navy prepared an Environmental Impact Assessment[1] (EIA) concerning how the plan would affect the environment. The assessment concluded that the necessary construction of 48 earth-covered magazines and associated structures would have no significant environmental impact, and therefore no Environmental Impact Statement (EIS) was prepared at the construction stage. Construction contracts were let in March 1977 and in April 1978. Construction of the West Loch facilities has been completed and the magazines are now in use. It is stipulated that the magazines are capable of storing nuclear weapons. Because the information is classified for national security reasons, the Navy's regulations forbid it either to admit or to deny that nuclear weapons are actually stored at West Loch.[2]

In 1978, the Navy prepared a Candidate Environmental Impact Statement (CEIS). This CEIS deals generally with the environmental hazards associated with the storage, han-

---

[1] An Environmental Impact Assessment is a document prepared by a federal agency in order to determine whether a formal Environmental Impact Statement should be prepared. See 40 CFR § 1508.9 (1981).

[2] Navy Security Classification Guide for Nuclear Weapons, Navy SWOP 55–1 (1974); Dept. of Navy, OPNAV Instruction 5721.1C (1975).

dling, and transporation of nuclear weapons, but does not refer to any specific site or storage facility. It concludes that no significant hazards to the environment are present.

In March 1978, respondents brought this action seeking an injunction against the building of the new facilities at West Loch until an EIS had been filed. Their principal complaint was that the Navy's EIA had ignored the enhanced risk of a nuclear accident resulting from West Loch's proximity to three nearby air facilities, the effects of such an accident on the population and environment of Hawaii, and the effects of radiation from the storage of nuclear weapons in a populated area. The United States District Court for the District of Hawaii concluded that the "construction and use of the storage facilities at West Loch is a major federal action" within the meaning of § 102(2)(C). 468 F. Supp. 190, 193 (1979). But given certain national security provisions of the Atomic Energy Act, 42 U. S. C. § 2011 *et seq.* (1976 ed. and Supp. IV), and the Navy's own regulations concerning nuclear weapons, the District Court concluded that petitioners had complied with NEPA "to the fullest extent possible." 468 F. Supp., at 193. We find it unnecessary to reach the question posed by the District Court's reliance on the security provisions of the Atomic Energy Act,[3] since respondents have made no showing in this case that the Navy has failed to comply, or even need comply, with NEPA's requirements regarding the preparation and public disclosure of an EIS.

Section 102(2)(C) of NEPA, 42 U. S. C. § 4332(2)(C), provides that, "to the fullest extent possible," all federal agencies shall "include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement" discussing, *inter alia*, the environmental impact of the proposed action and possible alternatives. Section 102(2)(C) also requires that the EIS be made available to the President, the Council on Environmental Quality

---

[3] 42 U. S. C. §§ 2014(y), 2161, 2162, 2271.

(CEQ), and the public, subject to the provisions of the Freedom of Information Act (FOIA), 5 U. S. C. § 552 (1976 ed. and Supp. V).

We have previously noted: "The thrust of § 102(2)(C) is . . . that environmental concerns be integrated into the very process of agency decisionmaking. The 'detailed statement' it requires is the outward sign that environmental values and consequences have been considered during the planning stage of agency actions." *Andrus* v. *Sierra Club*, 442 U. S. 347, 350 (1979). Section 102(2)(C) thus serves twin aims. The first is to inject environmental considerations into the federal agency's decisionmaking process by requiring the agency to prepare an EIS. The second aim is to inform the public that the agency has considered environmental concerns in its decisionmaking process. Through the disclosure of an EIS, the public is made aware that the agency has taken environmental considerations into account. Public disclosure of the EIS is expressly governed by FOIA. 42 U. S. C. § 4332(2)(C).

The decisionmaking and public disclosure goals of § 102 (2)(C), though certainly compatible, are not necessarily coextensive. Thus, § 102(2)(C) contemplates that in a given situation a federal agency might have to include environmental considerations in its decisionmaking process, yet withhold public disclosure of any NEPA documents, in whole or in part, under the authority of an FOIA exemption. That the decisionmaking and disclosure requirements of NEPA are not coextensive has been recognized by the Department of Defense's regulations, both at the time the West Loch facility was constructed[4] and today.[5]

In an apparent attempt to balance what it considered to be the disclosure requirements of NEPA with national security interests, the Court of Appeals concluded that petitioners could prepare and disclose an EIS that would assess the im-

---

[4] 32 CFR § 214.8 (1978) (repealed).
[5] 32 CFR § 214.6 (1980).

pact of the storage of nuclear weapons at West Loch without revealing specific information regarding the number and type of nuclear weapons to be stored at the facility. 643 F. 2d, at 572. The EIS could hypothesize, but not concede, that the facility will be used for the purpose for which it has been made capable. *Ibid.* But in inventing the "Hypothetical Environmental Impact Statement," the Court of Appeals departed from the express intent of Congress manifested by the explicit language in § 102(2)(C). That language provides that public disclosure of the EIS shall be governed by FOIA. As we concluded in *EPA* v. *Mink,* 410 U. S. 73, 80 (1973), FOIA was intended by Congress to balance the public's need for access to official information with the Government's need for confidentiality. Of the nine exemptions in Subsection (b) of FOIA, we think two are relevant in determining whether the Navy must release an EIS. Exemption 3, 5 U. S. C. § 552(b)(3), which authorizes the withholding of documents "specifically exempted from disclosure by statute," arguably exempts the publication of an EIS under the Atomic Energy Act. But we find it unnecessary to decide this question, because to us it is clear that Exemption 1, 5 U. S. C. § 552(b)(1), is applicable.

Exemption 1 exempts from disclosure matters that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." Executive Order No. 12065, 3 CFR 190 (1978–1979 Comp.), confers upon specified officials the power to classify information if its release would pose a threat to national security. Virtually all information relating to the storage of nuclear weapons is classified. Thus, any material properly classified pursuant to Executive Order No. 12065[6] is exempt from disclosure under

---

[6] Executive Order No. 12065 superseded Executive Order No. 11652, 3 CFR 678 (1971–1975 Comp.), which in turn superseded Executive Order

Exemption 1, and therefore is exempt from the public disclosure requirements of NEPA.

Congress has thus effected a balance between the needs of the public for access to documents prepared by a federal agency and the necessity of nondisclosure or secrecy. The Court of Appeals in this case should have accepted the balance struck by Congress, rather than engrafting onto the statutory language unique concepts of its own making. By requiring the Navy to prepare a "hypothetical" EIS, the Court of Appeals required the production of a document that would not exist save for what that court thought to be NEPA's public disclosure requirements. But NEPA's public disclosure requirements are expressly governed by FOIA. In *NLRB* v. *Sears, Roebuck & Co.*, 421 U. S. 132, 161–162 (1975), we held that FOIA "does not compel agencies to write opinions in cases in which they would not otherwise be required to do so. It only requires disclosure of certain documents which the law requires the agency to prepare or which the agency has decided for its own reasons to create." See *Forsham* v. *Harris*, 445 U. S. 169, 185–186 (1980); *Kissinger* v. *Reporters Committee*, 445 U. S. 136, 152 (1980). It follows that if the Navy would not be required by FOIA to release an EIS were one already prepared, it is obviously not required to prepare a "hypothetical" EIS nowhere mentioned in NEPA.

Since the public disclosure requirements of NEPA are governed by FOIA, it is clear that Congress intended that the public's interest in ensuring that federal agencies comply with NEPA must give way to the Government's need to preserve military secrets. In the instant case, an EIS concerning a proposal to store nuclear weapons at West Loch need not be disclosed. As we indicated earlier, whether or not

---

No. 10501, 3 CFR 979 (1949–1953 Comp.). Our decision in *EPA* v. *Mink*, 410 U. S. 73 (1973), rested on an application of Executive Order No. 10501. 410 U. S., at 81, and n. 7, 84, and n. 9.

nuclear weapons are stored at West Loch is classified information exempt from disclosure to the public under Exemption 1.

If the Navy proposes to store nuclear weapons at West Loch, the Department of Defense's regulations[7] can fairly be read to require that an EIS be prepared solely for internal purposes, even though such a document cannot be disclosed to the public. The Navy must consider environmental consequences in its decisionmaking process, even if it is unable to meet NEPA's public disclosure goals by virtue of FOIA Exemption 1.

It does not follow, however, that the Navy is required to prepare an EIS in this case. The Navy is not required to prepare an EIS regarding the hazards of storing nuclear weapons at West Loch simply because the facility is "nuclear capable." As we held in *Kleppe* v. *Sierra Club*, 427 U. S. 390, 405–406 (1976), an EIS need not be prepared simply because a project is *contemplated*, but only when the project is *proposed*. To say that the West Loch facility is "nuclear capable" is to say little more than that the Navy has contemplated the possibility that nuclear weapons, of whatever variety, may at some time be stored here. It is the proposal to *store* nuclear weapons at West Loch that triggers the Navy's obligation to prepare an EIS. Due to national security reasons, however, the Navy can neither admit nor deny that it proposes to store nuclear weapons at West Loch. In this case, therefore, it has not been and cannot be established that the Navy has proposed the only action that would require the preparation of an EIS dealing with the environmental consequences of nuclear weapons storage at West Loch.

Ultimately, whether or not the Navy has complied with NEPA "to the fullest extent possible" is beyond judicial scrutiny in this case. In other circumstances, we have held that "public policy forbids the maintenance of any suit in a court of

---

[7] See 32 CFR § 214.8 (1978) (repealed); 32 CFR § 214.6 (1980).

justice, the trial of which would inevitably lead to the disclosure of matters which the law itself regards as confidential, and respecting which it will not allow the confidence to be violated." *Totten* v. *United States*, 92 U. S. 105, 107 (1876). See *United States* v. *Reynolds*, 345 U. S. 1 (1953). We confront a similar situation in the instant case.

The decision of the Court of Appeals for the Ninth Circuit is reversed, and the case is remanded with instructions to reinstate the judgment of dismissal entered by the District Court.

*It is so ordered.*

JUSTICE BLACKMUN, with whom JUSTICE BRENNAN joins, concurring in the judgment.

The law to be applied in this case is relatively simple and straightforward. If the Navy proposes to engage in a major action that will have a significant environmental effect, it must prepare an environmental impact statement (EIS) addressing the consequences of the proposed activity. If disclosing the contents, or even the existence, of the EIS will reveal properly classified materials, the Navy need not publish the document. If nonclassified data is segregable and properly disclosable under Executive Order No. 12065, it must be released to the public. I write separately because I believe that the Court understates the first and third of these points, and overstates the second.

The Court states rather obliquely that if the Navy proposes to store nuclear weapons, "the Department of Defense regulations can fairly be read to require that an EIS be prepared solely for internal [Navy] purposes." *Ante*, at 146 (footnote omitted). In fact, the Defense Department regulations explicitly declare that "[t]he fact that a proposed action is of a classified nature does not relieve the proponent of the action from complying with the NEPA," although in such a circumstance the required EIS "shall be prepared, safeguarded and disseminated in accordance with the require-

ments applicable to classified information." 46 Fed. Reg. 22892, 22894 (1981) (to be codified in 32 CFR § 775.5). In this, the Defense regulations simply echo the statutory language: NEPA flatly requires that, "to the fullest extent possible," all federal agencies "include in *every* recommendation or report on . . . major Federal actions significantly affecting the quality of the human environment, a detailed [environmental impact] statement." 42 U. S. C. § 4332(C) (emphasis added). No exception is made for a confidential or classified proposal. Similarly, regulations promulgated by the Council on Environmental Quality provide simply that "environmental impact statements which address classified proposals may be safeguarded and restricted from public dissemination," 40 CFR § 1507.3(c) (1981); the regulations do not—and could not, consistently with the statute—suggest that classified proposals are exempt from NEPA's EIS requirement.

It seems to me that this follows necessarily from the function of the EIS. One of its purposes—if not its principal purpose—is to guarantee that "environmental concerns are . . . interwoven into the fabric of agency planning." *Andrus* v. *Sierra Club*, 442 U. S. 347, 351 (1979). The CEQ has recognized:

> "The primary purpose of an environmental impact statement is to serve as an action-forcing device to insure that the policies and goals defined in [NEPA] are infused into the ongoing programs and actions of the Federal Government. . . . An environmental impact statement is more than a disclosure document. It shall be used by Federal officials in conjunction with other relevant material to plan actions and make decisions." 40 CFR § 1502.1 (1981).

This is no less true when the public is unaware of the agency's proposals. Indeed, the public's inability to participate in military decisionmaking makes it particularly important that,

in cases such as the one before us, the EIS "serve practically as an important contribution to the decisionmaking process." § 1502.5.

The Court obviously is quite correct in holding that properly classified materials need not be disclosed under NEPA; even information concerning the existence of an EIS may be withheld when publication would divulge sensitive military information. It remains true, however, that the statute is in part intended to inform the public, see *ante*, at 143, and this informational purpose does not entirely lose its vitality when classified documents are involved. Again, the Defense regulations specifically direct that "[w]hen feasible, [EIS's] shall be organized in such a manner that classified portions are included as annexes so that the unclassified portions can be made available to the public," 46 Fed. Reg. 22892, 22894 (1981); further, the CEQ agrees that EIS's may be organized in such a way "that the unclassified portions can be made available to the public," 40 CFR § 1507.3(c) (1981). In a given case, then, the military must determine whether the information at issue, consistent with the dictates of the relevant Executive Orders, can be released. That principle is applicable in this and in every other case involving classified military material; I must assume that the Court does not hold differently.

It seems to me that the Court need not go beyond these relatively straightforward principles. FOIA's first exemption, 5 U. S. C. § 552(b)(1), defeats respondents' attempt to obtain classified material; it therefore is unnecessary to address the applicability or vitality of *Totten* v. *United States*, 92 U. S. 105 (1876), which suggested as a matter of "public policy" that certain suits involving confidential data could not be maintained. *Id.*, at 107. Similarly, it is unnecessary to address the applicability of *NLRB* v. *Sears, Roebuck & Co.*, 421 U. S. 132 (1975), to this case.* Petitioners convinc-

---

*The Court properly notes that *Sears* held that the FOIA "'does not compel agencies to write opinions in cases in which they would not other-

ingly argued that publishing a hypothetical EIS would itself disclose confidential material, and would therefore run afoul of the FOIA's first exemption. And, in any event, as the Court properly notes, *ante*, at 146, the respondents have yet to establish that any EIS need be prepared for the West Loch project. That is enough to dispose of the question of a hypothetical EIS.

Accordingly, I concur in the judgment of the Court.

---

wise be required to do so.'" *Ante*, at 145, quoting 421 U. S., at 161–162. The Court goes on to suggest that the Court of Appeals' analysis runs afoul of *Sears*, because that court "required [the Navy] to prepare a 'hypothetical' EIS nowhere mentioned in NEPA." *Ante*, at 145. But the Court of Appeals did not explicitly require the preparation of a series of hypothetical documents; instead, it stated that "factual information . . . [used in the EIS] *can* be based on a series of hypotheses," *Catholic Action of Hawaii/Peace Education Project* v. *Brown*, 643 F. 2d 569, 572 (CA9 1980) (emphasis added), thus authorizing the Navy to prepare advisory studies as a "smokescreen" if it wished to do so.

This does not raise quite the same issue as that involved in *Sears*. There, the Court held that a plaintiff could not compel the preparation of a document in order to obtain information not yet reduced to documentary form; here, respondents are trying to obtain data which they presume are contained in an existing study, with the Court of Appeals suggesting the production of new documents for the independent purpose of protecting national security. And there is, as well, another distinction between the cases: while it makes use of FOIA's disclosure provisions, NEPA is in essence an "action-forcing" statute. FOIA itself, however, is not.

It could be argued that the Court of Appeals' analysis violates the holding of *Kleppe* v. *Sierra Club*, 427 U. S. 390, 405–406 (1976), where this Court concluded that an EIS need be prepared only when a project is actually proposed; in seeming contradiction of that holding, the Court of Appeals stated that an EIS must be developed "[i]f nuclear storage is a *potential* choice." 643 F. 2d, at 571 (emphasis added). But it is less clear to me that the strictures of *Sears* are relevant here, and I would not reach the question.