George & Janice LAINE; James & Francis Goodwin; Robert & Mary Lou Brophy, Plaintiffs,

v.

Casper WEINBERGER, Secretary of Defense; John F. Lehman, Jr., Secretary of the Navy; Admiral Thomas B. Hayward, Chief of Naval Operations; Admiral Donald C. Davis, Commander in Chief, Pacific Fleet; Captain James R. Williams, Commanding Officer of Seal Beach Naval Weapons Station; Department of the Navy, Defendants.

No. CV 81–3969–AAH(Gx).

United States District Court, C. D. California.

June 18, 1982.

Leonard I. Weinglass & Linda Moreno, Los Angeles, Cal., for plaintiffs.

Stephen S. Trott, U. S. Atty., Frederick M. Brosio, Asst. U. S. Atty., Chief, Civ. Div., Stephen D. Petersen, Asst. U. S. Atty., Los Angeles, Cal., for defendants.

## DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

HAUK, Chief Judge.

George and Janice Laine and four other residents of Seal Beach are plaintiffs in this action for injunctive relief, seeking to enjoin operations at the United States Seal Beach Naval Weapons Station, Department of Defense, until such time as the Navy (1) files an Environmental Impact Statement (EIS) and (2) removes the "public nuisance" plaintiffs allege exists at the facility. Jurisdiction is founded on 28 U.S.C. § 1331 (existence of a Federal question), the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 et seq., and the Court's claimed pendent jurisdiction over state controversies arising out of the same matters alleged in support of the Federal question jurisdiction. The matter is presently before the Court on the defendants' motion to dismiss or in the alternative for summary judgment. Because the Court is considering matters outside the pleadings, it shall treat the motion as one for summary judgment and dispose of it as provided by Rule 56 of the Federal Rules of Civil Procedure.

### Background

The United States Naval Weapons Station at Seal Beach began operations in November 1944 and has continued operations without interruption since that time. It is the major Naval ammunition facility in Southern California, responsible for storing, maintaining and issuing ammunition to the United States Navy fleet homeported in San Diego and Long Beach, California.

Initially the land adjacent to the Naval Weapons Station was predominantly agricultural, and the surrounding Seal Beach community was relatively small, numbering less than 3,600 people. Rapid growth in the Los Angeles metropolitan area in the 1950's and 1960's, however, resulted in dramatic population growth in Seal Beach and the surrounding community. Seal Beach, alone, experienced nearly a ten-fold increase in population, and the agricultural land that previously insulated the weapons station from the community was replaced by homes and schools.

This dramatic growth in the Seal Beach area, coupled with an increasing national and local sensitivity and opposition to nuclear weapons storage, provides the backdrop for the present litigation.

Plaintiffs are six residents of Seal Beach who live within a mile of the Naval Weapons Station. They allege that the Station maintains and stores nuclear weapons and "excessive quantities" of high explosives.

This activity constitutes "major federal action significantly affecting the quality of the environment," they claim. Therefore, it is argued, NEPA mandates the preparation and submission of an Environmental Impact Statement (EIS). 42 U.S.C. § 4332. In addition, plaintiffs claim that the alleged presence of nuclear weapons and excessive high explosives at the Weapons Station constitutes a public nuisance. In their prayer for relief, plaintiffs request the Court to enjoin the Navy from the further handling of nuclear weapons and high explosives at the Seal Beach facility until it (1) complies with NEPA by filing an EIS and (2) removes the complained of "public nuisance."

Based upon the recent Supreme Court decision in *Weinberger v. Catholic Action*, 454 U.S. 138, 102 S.Ct. 197, 70 L.Ed.2d 298 (1982), defendants bring the present motion, urging that *Catholic Action* is the law of this case, mandates dismissal of plaintiffs' claims and requires summary judgment for defendants.

### Weinberger v. Catholic Action

Although there are some differences, *Catholic Action* involved facts startlingly similar to those in the instant case. The controversy there centered upon a Naval weapons storage facility and a group of neighborhood citizens concerned about the possible presence of nuclear weapons, just as in this case.

The West Loch branch of the Lualualei Naval Magazine is located on the island of Oahu, Hawaii. It has been used for handling and storage of ammunition since 1959. In 1975 the Navy decided to transfer ammunition and weapons stored at other locations on Oahu to the West Loch branch. Pursuant to that decision, the Navy prepared an Environmental Impact Assessment (EIA) covering the effect on the environment of the necessary construction associated with the transfer. The Assessment concluded that the construction would have no significant environmental impact, and that by reason thereof no EIS was required.

In March of 1979, the Catholic Action of Hawaii/Peace Education Project sought an injunction in Federal Court, District of Hawaii, against the building of the new facilities until an EIS had been filed. Pursuant to the national security provisions of the Atomic Energy Act, 42 U.S.C. § 2011 et seq., and the Navy's own regulations relating to nuclear weapons, the District Court denied the injunction, concluding that the Navy had complied with NEPA to the fullest extent possible. *Catholic Action of Hawaii, Etc., v. Brown*, 468 F.Supp. 190 (D.Hawaii 1979).

On appeal, the Ninth Circuit Court of Appeals determined that it was not sufficient to deal only with the environmental consequences of the *original construction*; the environmental consequences of the *operation* of the facility must be dealt with as well. The Court of Appeals reversed the District Court, ordering the Navy to prepare a "Hypothetical Environmental Impact Statement" covering the consequences of the possible alternative operation of the facility. *Catholic Action of Hawaii, Etc., v. Brown*, 643 F.2d 569 (9th Cir. 1980). Certiorari was granted by the United States Supreme Court on April 6, 1981, and its decision was rendered on December 1, 1981. *Weinberger v. Catholic Action*, 454 U.S. 138, 102 S.Ct. 197, 70 L.Ed.2d 298 (1982).

The Supreme Court concluded "that the 'Hypothetical Environmental Impact Statement' is a creature of judicial cloth, and that it is not mandated by any of the statutory or regulatory provisions upon which the Court of Appeals relied," thereby reversing the Ninth Circuit's judgment and reinstating the judgment of the District Court dismissing the case.

The Supreme Court interpreted NEPA to require an EIS only when a project is *proposed*, "not merely contemplated." After determining that plaintiffs could not establish that the Navy proposed to store nuclear weapons, the Court ruled that whether or not the Navy had complied with NEPA was beyond judicial scrutiny, and that, as a necessary result, the claims seeking the injunction against weapons storage were not justiciable causes of action.

The Supreme Court used a four-step analysis to arrive at the conclusion that the existence of a proposal to store nuclear weapons could not be established. The Court *first* noted that Congress in NEPA, 42 U.S.C. § 4332(2)(C), provided that public disclosure of an EIS is expressly governed by the Freedom of Information Act (FOIA), 5 U.S.C. § 552(b)(1). *Second*, the FOIA exempts from disclosure matters that are (1) authorized by executive order to be kept secret, and (2) are in fact properly classified. *Third*, the Court observed that Executive Order No. 12065 confers upon specified officials the power to classify information if its release would pose a threat to national security. *Fourth* and finally, the Court determined that virtually all information relating to the storage of nuclear weapons was properly classified by the specified officials pursuant to the Executive Order and was therefore exempt from disclosure under the FOIA. The Supreme Court concluded:

"Ultimately, whether or not the Navy has complied with NEPA 'to the fullest extent possible' is beyond judicial scrutiny in this case."

In our case, defendant Navy argues that with respect to the storage and handling of nuclear weapons, *Catholic Action* is solidly on point and controlling. Further, they urge a similar analysis be used by the Court with respect to conventional weapons storage. The "public nuisance" claim of plaintiffs, the Navy additionally argues, is barred by the Supremacy Clause and the Doctrine of Sovereign Immunity.

### NEPA Claims Relating to Nuclear Weapons

The Court absolutely is convinced that *Catholic Action* is squarely on point and controlling with respect to nuclear weapons. Nevertheless, both in their papers and at the May 17, 1982, hearing on defendants' motion, plaintiffs attempted to make distinctions between *Catholic Action* and the instant case.

Counsel for plaintiffs point out that in *Catholic Action* the Navy prepared an Environmental Impact Assessment (EIA). They maintain that this Court should order the Navy to likewise prepare an EIA in our case to aid the Navy in its internal decision-making process. The EIA in *Catholic Action*, however, was prepared pursuant to a proposal to *construct* a new weapons storage facility. After determining that the construction of the buildings would have no significant impact, the Navy concluded that no EIS was necessary.

The case here does differ from *Catholic Action* in one very significant aspect. There, new construction had been undertaken, while here, there has been absolutely no new construction as well as no major changes in operation of the Seal Beach facility, and there are no allegations that any are proposed. As the Supreme Court said in *Catholic Action* with respect to the EIS, it "need not be prepared simply because a project is *contemplated*, but only when the project is *proposed*." Using this same analysis for determining whether an EIA is required here, the Court is led to the unavoidable conclusion, *a fortiori*, that an EIA is not required.

Plaintiffs contend, however, that the Navy has somehow admitted that it stores nuclear weapons at Seal Beach, that this is major Federal action, and that the Navy should be forced to comply with NEPA. This is a specious and untenable argument.

The plaintiffs offer no actual admission by the Navy that it is storing nuclear weapons at Seal Beach. In fact, the Navy is on record as refusing either to admit or to deny the presence of nuclear weapons at the Seal Beach facility. Instead, plaintiffs point to certain characteristics of the Station from which they improperly infer the presence of nuclear weapons.

Plaintiffs point to the "special ordinance areas" and the admitted presence of SUBROC and ASROC missiles. The "special ordinance areas," they say, are storage areas for nuclear weapons, but they offer no evidence supporting this contention other than their own unfounded apprehensive conjecture. On the other hand, while admitting that the "special ordinance areas"

could store nuclear weapons, the Navy is adamant in refusing, for national security reasons, either to admit or deny their presence.

With respect to the SUBROC and AS-ROC missiles, the arguments of both sides are much the same. Plaintiffs claim they are nuclear weapons, but offer no evidence from any credible source, Government or otherwise, that they are. The Navy does admit that these missiles are capable of being armed with a nuclear warhead, but refuses either to admit or to deny that those at Seal Beach in fact so carry, or are armed with, a nuclear warhead.

■ Plaintiffs do not and cannot in any factual sense establish that the Navy is storing nuclear weapons, or is proposing to store them at the Seal Beach Naval Weapons Center. Because major Federal action or the proposal for such action is the only activity that can trigger the requirement of an EIS or EIA, summary judgment for defendants is mandatory as to that portion of the NEPA claim dealing with nuclear weapons, there being no genuine issue of material fact.

*NEPA Claims Relating to Conventional Weapons*

The Navy urges the Court to utilize the technique used by the Supreme Court in *Catholic Action* in here analyzing that portion of plaintiffs' NEPA claim dealing with conventional weapons. Once again, Section 102(2)(C) of NEPA, 42 U.S.C. § 4332(2)(C) refers us to the Freedom of Information Act to determine what should not be disclosed in an EIS. The FOIA, 5 U.S.C. § 552(b)(1)(A), exempts any material that is (1) authorized by Executive Order to be kept secret, and (2) is in fact properly classified. Executive Order 12065 authorizes the Secretary of Navy and "those principal subordinate officials who have a frequent need to exercise such authority" to classify certain national security information. The Navy provides a designation of authority in a Memorandum for the Director of Naval Intelligence—Re: Delegation of Authority, Exhibit S, which delegates authority to classify top secret material to 93 individuals. Pursuant to the delegation, the Navy has classified a tremendous amount of material relating to conventional weapons. It is defendants' contention that virtually all materials dealing with the storage of conventional weapons is classified. They offer OPNAV INSTRUCTION S5513.3A, Exhibit U, as evidence on this point. Because virtually nothing can be disclosed, the Government argues that no meaningful *public EIS* or *EIA* could be developed. The plaintiffs offer absolutely no evidence whatsoever, by affidavits, exhibits or otherwise, that in any way controvert the Navy's evidence.

The Navy also addresses the issue of whether or not there is or was a "proposal" for "major Federal action" at the Seal Beach facility. They assert that there are no proposals and that plaintiffs have not alleged any. Defendants cite cases (including *Catholic Action*) for the proposition that no EIS is required for essentially continuous activity. *City and County of San Francisco v. United States,* 615 F.2d 498, 501 (9th Cir. 1980); *Burbank Anti-Noise Group v. Goldschmidt,* 623 F.2d 115 (9th Cir. 1980); *County of Trinity v. Andrus,* 438 F.Supp. 1368, 1388–1389 (E.D.Cal.1977).

As further evidence that the Navy has not proposed or undertaken any "major Federal action," the Navy submits Exhibits A and B and the declaration of Commander Shick. These items demonstrate conclusively that weapons ordinance tonnage for all operations, numbers of civilian employees, and numbers of military personnel have decreased over the last ten years at the Seal Beach Naval Weapons Station. Once again, plaintiffs offer absolutely no evidence whatsoever, by affidavits, exhibits, or otherwise, to controvert the Navy's evidence.

■ Finding neither major Federal action nor a proposal for such action, whether "construction" or "operation," relating to conventional weapons at the Seal Beach facility, summary judgment on the conventional weapons portion of plaintiffs NEPA claim must be entered in favor of defend-

ants, again there being no genuine issue of material fact.

### Public Nuisance Claim

■ The Supreme Court has ruled on numerous occasions that a State is powerless to condition the means by which the Federal Government carries out its activities. See: *United States v. Georgia Public Service Com.*, 371 U.S. 285, 83 S.Ct. 397, 9 L.Ed.2d 317 (1963); *Hancock v. Train*, 426 U.S. 167, 96 S.Ct. 2006, 48 L.Ed.2d 555 (1967); *Arizona v. California*, 283 U.S. 423, 51 S.Ct. 522, 75 L.Ed. 1154 (1931). Plaintiffs ask this Court to enjoin the activities of a Federal military installation until the installation conforms to California public nuisance laws. Not surprisingly, the plaintiffs offer no authority to support this ill-conceived and baseless request. The cases are clear on the point. This Court simply may not apply the California public nuisance laws to the operations of a Federal military installation. The Supremacy Clause of the United States Constitution, Article VI, Clause 2, forbids it. *Georgia Public Service Com., Hancock v. Train,* and *Arizona v. California, supra.*

The Doctrine of Sovereign Immunity also must be considered at this juncture. It is clear that tort actions against the Federal Government are cognizable exclusively under the Federal Torts Claims Act, 28 U.S.C. § 1346. *DSI Corp. v. Secretary of Housing and Urban Development*, 594 F.2d 177, 180 (9th Cir. 1979).

■ Defendants suggest three reasons why the public nuisance claim is not cognizable under the Tort Claims Act. *First*, the United States is not a named defendant as required by 28 U.S.C. §§ 2674 and 2679. *Second*, plaintiffs' complaint fails to allege compliance with the administrative claim requirements of 28 U.S.C. § 2675(a), and have as a consequence failed to exhaust their administrative remedies. *Third* and finally, the complaint seeks only equitable relief. While the first two of these defects could possibly be cured by amendment of the complaint, plaintiffs have not and cannot allege any provable damages by reason of any public nuisance at the Seal Beach Weapons Facility. Therefore, it is clear that the Doctrine of Sovereign Immunity bars the public nuisance claim in plaintiffs' complaint because they do not and cannot allege complete compliance with the Federal Torts Claims Act.

### Conclusion

This Court is indeed sympathetic with the plaintiffs' plight. We too are concerned about the hazards of nuclear weapons storage. Nevertheless, the Supreme Court has made it abundantly clear in *Catholic Action, supra,* that whether or not the Navy has complied with NEPA is "beyond judicial scrutiny." By the Supreme Court's decision it is impermissible to consider NEPA the proper tool, and this or any other Federal District Court the proper forum, for resolving the problem of nuclear weapons storage, and calming the fears of those sensitive to the issue.

There being no genuine issue of material fact herein, this Court must and does hereby order that summary judgment be entered forthwith in favor of defendants, and this Decision and Order shall constitute the Court's Findings of Fact and Conclusions of Law herein.

It is further ordered that each party shall bear his, her and its own costs of suit incurred herein; and that the Clerk shall file and enter this Decision and Order forthwith, and serve copies hereof upon all counsel of record herein.

LET SUMMARY JUDGMENT BE ENTERED ACCORDINGLY.