## STATE OF WISCONSIN, Plaintiff
## and
### County of Marquette, Michigan, Intervening Plaintiff,

v.

### Caspar WEINBERGER, individually and as Secretary of the Department of Defense, the United States Department of Defense, John F. Lehman, Jr., individually and as Secretary of the Department of the Navy, and the United States Department of the Navy, Defendants.

No. 83–C–672–C.

United States District Court,
W.D. Wisconsin.

April 5, 1984.

---

Shari Eggleson, Asst. Atty. Gen., Madison, Wis., for State of Wis.

Patricia Micklow, Chief Civil Counsel, Marquette County, Marquette, Mich., for intervening plaintiff County of Marquette, Mich.

John Byrnes, U.S. Atty., Madison, Wis., for defendants.

CRABB, Chief Judge.

On January 31, 1984, I entered findings of fact, an opinion, and an order enjoining defendants from taking any further action toward constructing a new ELF facility in Marquette County, Michigan, upgrading the existing ELF facility in Wisconsin, or supplying submarines with ELF receivers until they have complied with the requirements of the National Environmental Policy Act, 578 F.Supp. 1327. Specifically, I found that defendants violated the National Environmental Policy Act in proceeding with the reactivation of Project ELF without undertaking a thorough and comprehensive review of significant post–1977 information on biological effects of electromagnetic radiation. Thus, I enjoined the

proposed reactivation of Project ELF until the Navy shall have prepared and filed a supplemental environmental impact statement reviewing the post–1977 scientific information on biological effects of electromagnetic radiation.

Two post-trial motions are presently before the court. Defendants have filed a motion for reconsideration (and implicitly for vacation) of that portion of the January 31, 1984 order enjoining them from proceeding with the reactivation of Project ELF or, in the alternative, for a stay of the injunction pending appeal. Plaintiffs have filed a motion for clarification whether the injunction precludes defendants from operating the existing ELF facility in Wisconsin until they have prepared and filed the required environmental impact statement.

■ As a preliminary matter, defendants contend that plaintiffs' motion for clarification of the January 31, 1984 order is in essence a motion for reconsideration (and modification) of that order and that plaintiffs failed to file their motion within ten days after entry of judgment as required by Rule 59(e) of the Federal Rules of Civil Procedure. Although plaintiffs did not file a formal motion for clarification until February 24, 1984, counsel for plaintiff State of Wisconsin requested clarification of the order in a letter dated February 7, 1984, five days after entry of judgment on February 2, 1984. This letter was received by the court on February 13, 1984. Because this letter motion was filed within the ten day period established in Rule 59(b), plaintiffs are not precluded from seeking clarification of the January 31, 1984 order. *See* Rule 6(a), Federal Rules of Civil Procedure.

## DEFENDANTS' MOTION FOR RECONSIDERATION

Defendants contend that national defense interests will be substantially impaired if the injunction is not dissolved. In support of this assertion, defendants have submitted two affidavits: one of the Secretary of the Navy, John F. Lehman, and one of the program manager for the ELF communication system, Captain Ronald L. Koontz.

In his affidavit, Secretary Lehman avers that because the ELF system is essential to national defense, any delay in constructing the Michigan facility is contrary to national defense interests. In particular, Secretary Lehman stresses that enabling the submarines to remain undetected and establishing continuous communication between the submarine forces and the President and the Secretary of Defense is important to the survivability and effective operation of the United States submarine force. Because the ELF system enables submarines to receive communication without reducing speed or operating near the surface to deploy an antenna, the Secretary contends that it will decrease the probability of detection of United States submarines, and therefore, that Project ELF represents a critical safeguard against scientific breakthroughs in the area of submarine detection by other nations, particularly the Soviet Union. Moreover, he contends, because intelligence reports indicate that the Soviet Union is capable of using extremely low frequency electromagnetic radiation for military communications, the United States must have a comparable system to ensure the effectiveness of its submarine forces.

Captain Koontz's affidavit provides information about the proposed schedule for reactivating Project ELF in the absence of an injunction. Upgrading the Wisconsin facility, including a nine month test period, is scheduled to be completed by September, 1985. Since the upgrading activities began in July, 1983, approximately $1 million or 40% of the contract funds have been expended. Construction and testing of the Michigan test facility are scheduled to be completed by April, 1986. According to the schedule, bids for the construction were due by February 16, 1984, with an award to be made a few weeks thereafter. To date, 96% of the property interests for the 56 mile antenna network have been obtained, design and engineering contracts for installation of power lines are ready for award, and design contracts for interference mitigation activities are also ready for award. Captain Koontz avers that, because weather conditions in Wisconsin and Michigan

limit the construction season to the period from May 1 to November 1 and much of the construction and interference mitigation work must be accomplished during this construction season, the currently effective injunction will result in at least a full year's delay in the Project ELF reactivation schedule. A one year delay in completing the system would increase the program cost by $10–$15 million.

In opposition to defendants' contention that the injunction will substantially impair national defense interests, plaintiffs have submitted a 1979 General Accounting Office report, "An Unclassified Version of a Classified Report Entitled 'The Navy's Strategic Communications Systems—Need for Management Attention and Decision-making,'" and transcripts of portions of the testimony of Secretary of the Navy Lehman and Rear Admiral Frank B. Kelso, director of the Navy's Strategic Submarine Division, before the Senate Armed Services Committee.

After examining the Navy's submarine communication systems, the General Accounting Office concluded that the Navy should discontinue any plans to construct an extemely low frequency system because it would duplicate reliable existing systems, it would enhance communications capability only marginally at best, and the expenditure of funds could not be justified given the limited return expected. In his testimony before the Senate Armed Services Committee in late February and early March, 1983, Secretary Lehman indicated that no scientific breakthroughs are expected in this century that would impair the survivability of the strategic submarine forces. Similarly, Rear Admiral Kelso testified before the same committee that, at present, detection of floating wire antennae or communication buoys does not represent a serious threat to the nuclear submarine forces.

Defendants' motion for reconsideration rests on their assertion that a court must engage in an equitable balancing of harms before issuing an injunction to redress a violation of the National Environmental Policy Act. Defendants argue that I should reconsider my earlier decision and undertake a balancing of the relative harms to the parties of an injunction before deciding whether to issue an injunction.

Defendants rely, as they did in their post-trial brief, on the Supreme Court's decision in *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982). That case concerned the Navy's practice of discharging ordinance into the sea in the course of weapons training without first obtaining a permit as required by the Federal Water Pollution Control Act. The district court had found that the Navy had violated the Act, but that the cumulative discharges had not harmed the quality of the water. Noting this finding, the Supreme Court held that under the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251–1376, district courts retain discretion to fashion remedies other than injunctions. Although an injunction would have achieved compliance with the permit procedures established under the Act, it was not required in order to further the purpose of the Act which was the maintenance of the integrity of the nation's waters. 456 U.S. at 314, 102 S.Ct. at 1804.

In determining whether district courts must engage in the traditional balancing of harms before enjoining continuing violations of a statute, the Supreme Court has reviewed the purpose and language of the particular statute to ascertain whether remedies other than injunctions can vindicate the objectives of the statute. In *Weinberger v. Romero-Barcelo*, the Court determined that other remedies, such as fines and criminal penalties were available; therefore, traditional balancing must be undertaken to decide whether an injunction should issue. *See* 33 U.S.C. § 1319(c) and (d). In contrast, in *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978), the Court held that Congress had foreclosed the exercise of the usual discretion possessed by a court of equity, because the Endangered Species Act flatly prohibits the destruction of critical habitats, 16 U.S.C. § 1536. Therefore, the district court was not free to engage in a balancing of the harms, but was required to enjoin completion of a dam in order to preserve an endangered species. The En-

dangered Species Act represents the outcome of a balancing of competing interests undertaken by Congress: "Congress ... had chosen the snail darter over the dam." *Weinberger v. Romero-Barcelo,* 456 U.S. at 314, 102 S.Ct. at 1804.

■ Once Congress has decided the order of priorities in a given area by enacting a statutory mandate, the courts must enforce the mandate by enjoining imminent violations of the Act when enforcement is sought. *Tennessee Valley Authority v. Hill,* 437 U.S. at 194–95, 98 S.Ct. at 2301–02; *accord United States v. City & County of San Francisco,* 310 U.S. 16, 30–31, 60 S.Ct. 749, 756–757, 84 L.Ed. 1050 (1940).

■ In much the same way that it has chosen to preserve endangered species, Congress has chosen to impose a decisionmaking process on federal agencies by enacting the National Environmental Policy Act. The Act is designed to ensure that environmental concerns are integrated into the process of agency decisionmaking and that the public is informed of the agency's consideration of the environmental consequences of its decisions. *Weinberger v. Catholic Action of Hawaii/Peace Education Project,* 454 U.S. 139, 142–43, 102 S.Ct. 197, 201, 70 L.Ed.2d 298 (1981).

■ The National Environmental Policy Act focuses on the procedural aspects of the decisionmaking process. The Act requires federal agencies to assess the environmental impact of their proposals *before* deciding to proceed with an action. *Andrus v. Sierra Club,* 442 U.S. 347, 350–52 & n. 3, 99 S.Ct. 2335, 2337–38 & n. 3, 60 L.Ed.2d 943 (1979). Thus, when federal officials make a decision without first evaluating its environmental consequences, the harm that the Act is intended to prevent has been suffered. *Massachusetts v. Watt,* 716 F.2d 946, 952 (1st Cir.1983). In contrast, in *Weinberger v. Romero-Barcelo,* 456 U.S. 305, 102 S.Ct. 1798, the Navy's failure to obtain a permit before discharging ordinance did not result in harm to the nation's water, which is the harm the Federal Water Pollution Control Act is designed to prevent.

■ In environmental policy act cases, an injunction fulfills the purposes of the Act by preserving the status quo, so that an agency preparing an environmental impact statement and members of the public commenting on the draft statement may evaluate the environmental consequences of the proposal and choose among alternatives before resources are committed to a given course of action. When an agency fails to prepare and file an environmental impact statement before making a decision to which the National Environmental Policy Act applies, the purpose and language of the statute oblige the reviewing court to order that the agency prepare and file the required statement. In most situations, giving effect to the Act will require the court to issue an injunction prohibiting the agency from committing itself to a future course of action before complying with the environmental impact statement requirements of the Act so that the agency's reconsideration of the proposal is more than an empty gesture. *Environmental Defense Fund v. Tennessee Valley Authority,* 468 F.2d 1164, 1183–84 (6th Cir.1972).

■ However, there are a few situations in which issuance of an injunction would not be required as, for example, where there has been a technical violation of the Act but not of the Act's substantive requirements, so that the agency cannot be said to be proceeding in ignorance of possible adverse consequences. *See, e.g., Realty Income Trust v. Eckerd,* 564 F.2d 447, 457 (D.C.Cir.1977); *Concerned About Trident v. Rumsfeld,* 555 F.2d 817 (D.C.Cir. 1976). In addition, an injunction need not issue if there are other circumstances making it unlikely that the agency will proceed with the project before the statement is filed. *See Friends of the Earth, Inc. v. Weinberger,* 562 F.Supp. 265 (D.D.C.1983), *appeal dismissed,* 725 F.2d 125 (D.C.Cir. 1983); and *Atchison, Topeka & Santa Fe Ry. Co. v. Callaway,* 431 F.Supp. 722 (D.D. C.1977). Finally, if the proposed action will not lead to the irrevocable commitment of resources, thereby foreclosing alternative choices, an injunction is not necessary to preserve the integrity of the decisionmak-

ing process to which the environmental impact statement applies. *Conservation Law Foundation v. General Services Administration,* 427 F.Supp. 1369, 1375–76 (D.R.I.1977).

■ Because there are situations in which the issuance of an injunction would not further the purposes of the National Environmental Policy Act, I am hesitant to declare that injunctive relief is mandatory once a court finds that an agency violated the Act. *Cf. Lathan v. Volpe,* 455 F.2d 1111, 1115–17 (9th Cir.1971); and *Columbia Basin Land Protection Ass'n v. Kleppe,* 417 F.Supp. 46, 48 (E.D.Wash. 1976). However, it is clear that a court's discretion to decline to issue an injunction is strictly confined by the purposes and language of the Act. I conclude that, when an action is being undertaken in violation of the National Environmental Policy Act, there is a presumption that injunctive relief should be granted prohibiting continuation of the action until the agency brings itself into compliance. *Realty Income Trust v. Eckerd,* 564 F.2d at 456. This presumption may be overcome if an injunction would not serve the purposes of the Act by preserving freedom of choice for the agency after it considers possible adverse environmental consequences of its options.

■ In this case, defendants have not overcome the presumption that an injunction is necessary, but have argued only that there should be an exemption from the statute's requirements for projects that involve national defense interests. However, the law is clear that there is no such exemption. *See Concerned About Trident v. Rumsfeld,* 555 F.2d at 823. ("There is no support in either the statute or the cases

for implying a 'national defense' exemption from NEPA.") *See also* 32 C.F.R. §§ 214.- 6(D)(4) and 775.3(b)(1).

If I were to engage in traditional balancing of the relative harms to the parties after having found a clear and substantial violation of the Act, I would be treating this case differently from other similar cases, and thus carving out an exemption for national defense interests that Congress was unwilling to provide.[1] To do so would be to disregard a congressionally declared national policy of environmental planning applicable to all federal agencies.

■ Congress has mandated that federal agencies implement the Act to the fullest extent possible. 42 U.S.C. § 4332. Neither congressional appropriation of funds nor presidential endorsement of a project subject to the Act exempts a proposed action from the Act's environmental impact statement requirements. *Environmental Defense Fund v. Tennessee Valley Authority,* 468 F.2d at 1183. Therefore, in deference to the directions of Congress embodied in the National Environmental Policy Act, I will refrain from undertaking to balance the harm the injunction will inflict on national defense interests against the harm to the congressionally declared policy of environmental planning.

■ In a case such as this where the violations of the Act are substantial and the agency has made little or no attempt to consider environmental consequences in deciding to reactivate and continue prior stages of Project ELF, an injunction is necessary in order to preserve the decision-making process envisioned by the Act. In my January 31, 1984 order, I issued an injunction to preserve the status quo so

---

1. Most of the cases cited by the parties to illustrate judicial balancing of the relative harms before issuing injunctions for violations of the National Environmental Policy Act concern preliminary injunctions rather than injunctions accompanying a finding of a violation of the Act. *See Massachusetts v. Watt,* 716 F.2d 946 (1st Cir.1983); *Committee for Nuclear Responsibility, Inc. v. Seaborg,* 463 F.2d 796 (D.C.Cir.), *aff'd,* 404 U.S. 917, 92 S.Ct. 242, 30 L.Ed.2d 191 (1971); *Citizens for Responsible Area Growth v. Adams,* 477 F.Supp. 994 (D.N.H.1979), *vacated*

*in part and remanded on other grounds,* 680 F.2d 835 (1st Cir.1982); *Conservation Law Foundation v. General Services Foundation,* 427 F.Supp. 1369 (D.R.I.1977); *Atchison, Topeka & Santa Fe Ry. Co. v. Callaway,* 382 F.Supp. 610 (D.D.C.1974). Although traditional balancing of equities enters into a decision to issue a preliminary injunction, the standard for issuing an injunction is different once the facts have been fully developed at trial and a court has found that the agency violated the Act.

that the agency and the public could decide among alternative courses of action in preparing and reviewing the supplemental environmental impact statement. Because I have concluded that the court's role in balancing the relative harms should concern the degree to which an injunction will further the purposes of the Act and I did that balancing in my earlier decision, I will grant defendants' motion for reconsideration, but I will deny what I have construed as their motion for vacation of the injunction.

## DEFENDANTS' MOTION FOR A STAY PENDING APPEAL

As an alternative to their motion for reconsideration, defendants have requested that the court stay the injunction pending appeal pursuant to Rule 62 of the Federal Rules of Civil Procedure. However, defendants have not yet filed a notice of appeal as required by Rule 3 of the Federal Rules of Appellate Procedure.[2] Because defendants' alternative motion for a stay pending appeal is premature, I decline to rule on this motion at this time.

## PLAINTIFFS' MOTION FOR CLARIFICATION

■ In their complaints, both the plaintiff and the intervening plaintiff sought a judgment enjoining defendants from proceeding with further construction, upgrading, or operation of the ELF facilities until the Navy prepared and circulated a supplemental environmental impact statement and re-evaluated its decision to proceed with the project in light of the information contained in the statement. In my January 31, 1984 order, I enjoined defendants from taking any further action in respect to constructing a new ELF facility in Marquette County, Michigan, to upgrading the existing ELF facility in Wisconsin, or to supplying submarines with ELF receivers until they have prepared and filed a supplemental environmental impact statement in compliance with the requirements of the National Environmental Policy Act. Plaintiffs now seek clarification whether the injunction prohibits defendants from operating the existing ELF facility before they have complied with both the Act and the January 31, 1984 order.

Ordinarily, the Act's environmental impact statement requirements apply to an agency decision to proceed with a proposed action. A court holding that an agency failed to fulfill its obligations under the Act would issue an injunction prohibiting the agency from proceeding with the proposed action until it had prepared and filed the required environmental impact statement. The injunction would preserve the status quo so that the agency would have the widest freedom of choice in deciding whether to proceed with the proposed action.

Under this rationale, that is, preserving the widest freedom of choice for the agency decision, it is not necessary to enjoin operation of the existing ELF facility. There is no evidence that continued operation of the existing facility would commit resources irrevocably to the expansion and reactivation of the ELF system. Therefore, I cannot conclude that continued operation of the existing facility would further bind the agency to reactivate and expand the ELF system and would thereby disrupt the decisionmaking process mandated by the National Environmental Policy Act.

Despite the fact that continued operation of the existing facility would not foreclose a fresh and different rebalancing of the costs and benefits of reactivating and expanding the ELF system, plaintiffs argue that operation of the existing ELF facility

---

**2.** In order to rule on defendants' motion for a stay pending appeal, I would have to determine whether defendants have a strong likelihood of succeeding on the merits of their appeal. *See Armstrong v. O'Connell,* 416 F.Supp. 1325, 1329–30 (E.D.Wis.1976); *Stop H–3 Association v. Volpe,* 353 F.Supp. 14, 16 (D. Hawaii 1972). The only indication of defendants' grounds for appeal appears in a footnote in their reply brief in which defendants state that the court's failure to apply an equitable balancing test before issuing an injunction provides one basis for an appeal. In the absence of a notice of appeal and express grounds on which the appeal is taken, I will not take up the motion. I do not intend to search through defendants' briefs for possible grounds for an appeal.

should be enjoined pending the evaluation of the hazards of such operation that is required by the National Environmental Policy Act. To the extent the Act is designed to prevent agencies from proceeding with actions that adversely affect the environment in ignorance of such adverse environmental consequences, plaintiffs' argument has some merit. *See Realty Income Trust v. Eckerd*, 564 F.2d at 456–57.

Although Congress intended that agencies explore the environmental consequences of proposed actions before deciding whether to proceed with them, in this case the Navy's obligation to prepare a supplemental environmental impact statement arose under a regulation requiring agencies to review the environmental impact of ongoing agency actions for which environmental impact statements have already been prepared. 40 C.F.R. § 1502.-9(c)(1)(ii). Presumably, an agency faced with significant new information bearing on the environmental consequences of ongoing actions must decide whether to continue or discontinue the action in light of the new information. The preparation of a supplemental environmental impact statement assists the agency in this decision-making process.

Normally, when an agency has failed to prepare an environmental impact statement as required by the National Environmental Policy Act, a court must issue an injunction to preserve both the status quo and the integrity of the decisionmaking process. However, in the case of a violation of 40 C.F.R. § 1502.9(c)(1)(ii), enjoining an ongoing action would change the status quo and commit the agency to a particular course of action. In those circumstances, an injunction would not enhance the integrity of the decisionmaking process. The agency would be forced to discontinue the ongoing action before it has had an opportunity to prepare and consider the supplemental environmental impact statement.

In the absence of a showing that there is a strong probability of serious and immediate environmental harm from the ongoing action, a court should not prevent the continuation of an ongoing agency action whenever the obligation arises to review

the possible environmental impact of the project. In this case, plaintiffs have not offered compelling evidence that continued operation of the Wisconsin ELF facility will cause an immediate adverse impact to the environment. Therefore, I will clarify that my January 31, 1984 order does not prevent defendants from continuing to operate the existing ELF facility while they are preparing the supplemental environmental impact statement.

### ORDER

IT IS ORDERED that defendants' motion for reconsideration is GRANTED and defendants' motion to vacate the injunction is DENIED; defendants' alternative motion for a stay of the injunction pending appeal is DENIED without prejudice; and plaintiffs' motion for clarification is GRANTED. IT IS FURTHER ORDERED that my January 31, 1984 order is amended to state that defendants are not enjoined from operating the existing ELF facility in Wisconsin until they have prepared and filed a supplemental environmental impact statement in compliance with the National Environmental Policy Act.