616 F.Supp. 27 (1985)
Raymond F. WEHNER, et al., Plaintiffs,
v.
SYNTEX AGRIBUSINESS, INC., et al., Defendants.
No. 83-642 C (2).
United States District Court, E.D. Missouri, E.D.
April 1, 1985.
On Motion to Dismiss April 1, 1985.
*28 Murry A. Marks, John Doskocil, St. Louis, Mo., Arnold Levin, Laurence S. Berman, and Alan Kanner, Philadelphia, Pa., for plaintiffs.
F. Wm. McCalpin, Richard A. Ahrens, St. Louis, Mo., Hunton & Williams, Joseph M. Spivey III, Richmond, Va., Stephen D. Busey, James J. Taylor, Jr., Smith & Hulsey, Jacksonville, Fla., Robert L. Driscoll, Kansas City, Mo., Paul S. Brown, John J. Cole, St. Louis, Mo., George Weisz, New York City, W. Munro Roberts, Jr. and Ted L. Perryman, St. Louis, Mo., for defendants.

MEMORANDUM AND ORDER
FILIPPINE, District Judge.
This matter is before the Court on the motion of Syntex Corporation ("Corporation") to dismiss for lack of personal jurisdiction.
This is a private action for response costs brought under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601, et seq. Plaintiffs allege they have incurred compensable response costs as a result of their exposure to dioxin within the state of Missouri.
Corporation is a publicly owned life sciences and health care company. Syntex (U.S.A.) Inc. ("USA") is the wholly owned American subsidiary of Corporation. USA in turn owns the stock of various subsidiaries, including Syntex Agribusiness ("Agribusiness"). Thus, Corporation owns USA, which owns Agribusiness.
Agribusiness is a separate entity and owns, in its own name, plants, property, and equipment located in Missouri and Iowa valued at $35,000,000. Corporation itself owns no real or personal property in Missouri; nor does it transact any business within this state. Agribusiness acquired the assets of a Missouri corporation called Hoffman-Taff, Inc. ("Old HT"). After this acquisition Agribusiness carried on the activities of Old HT. Plaintiff maintains that this Court has jurisdiction over Corporation because of Corporation's relationship to the activities of Agribusiness. Plaintiff has also named Agribusiness as a defendant.
The initial issue with regard to the motion to dismiss is the proper law to be applied in determining the existence of personal jurisdiction over Corporation. This lawsuit is brought under CERCLA which does not authorize nationwide service of process. This Court looks to the provisions *29 of Rule 4 of the Federal Rules of Civil Procedure in determining the manner in which this Court may exercise jurisdiction over Corporation. Rule 4(e) provides that, absent a statute authorizing nationwide service of process, a defendant may only be served under the circumstances and in the manner prescribed by a statute or rule of court of the state in which the district court sits. Thus, in order for this Court to exercise personal jurisdiction over Corporation, Corporation must be subject to the jurisdiction of the Missouri state courts. Amenability to service of process is controlled by state long arm statutes and the Fourteenth Amendment to the United States Constitution. DeMelo v. Toche Marine, Inc., 711 F.2d 1260, 1264-72 (5th Cir.1983); 4 C. Wright & A. Miller, Federal Practice and Procedure § 1075 at 312-13 (1969 & Supp. 1984); 2 J. Moore, J. Lucas, H. Fink & C. Thompson, Moore's Federal Practice ¶¶ 4.32[1], 4.41-1[3] (1982). But see, A. vonMehren & D. Troutman, Jurisdiction to Adjudicate: A Suggested Analysis, 79 Harv.L.Rev. 1121, 1123 n. 6 (1966) (critical of the view that Rule 4(e) adopts state provisions on amenability of process); Handley v. Indiana & Michigan Elec. Co., 732 F.2d 1265 (6th Cir.1984) (apparently holding that only statutory requirements of state service must be satisfied).
This Court must now determine whether Corporation is amenable to service of process under the laws of the state of Missouri as limited by the Fourteenth Amendment. Plaintiff seeks this Court to grasp Corporation within its jurisdictional reach under both the general service of process statute, R.S.Mo. § 506.150(3), and the long-arm statute, R.S.Mo. § 506 500 of the state of Missouri. Plaintiff grounds its prayer of this count on the ground that Agribusiness, a subsidiary of corporation, is subject to the jurisdiction of this Court. In support of this proposition plaintiff relies upon several district court opinions, e.g., Brunswick Corp. v. Suzuki Motor Co., 575 F.Supp. 1412 (E.D.Wis.1983); Hoffman v. United Telecommunications, Inc., 575 F.Supp. 1463 (D.Kan.1983); Energy Reserves Group, Inc. v. Superior Oil Co., 460 F.Supp. 483 (D.Kan.1978), that depart from the well settled rule that jurisdiction over a parent corporation based upon the activities of its subsidiary is proper only when the separate corporate existence of the subsidiary has been ignored by the parent. Cannon Manufacturing Co. v. Cudahy Packing Co., 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 635 (1925); Lakota Girl Scout Council, Inc. v. Havey Fund Raising Management, Inc., 519 F.2d 634 (8th Cir. 1975); Escude Cruz v. Ortho Pharmaceutical Corp., 619 F.2d 902 (1st Cir.1980); Blount v. Peerless Chemicals (P.R.), Inc., 316 F.2d 695 (2d Cir.), cert. denied sub nom. Colbert v. Peerless Chemicals (P.R.), Inc., 375 U.S. 831, 84 S.Ct. 76, 11 L.Ed.2d 62 (1963). Plaintiff also argues that under the facts of this case Corporation has ignored the corporate separateness of itself and its wholly owned subsidiary Agribusiness.
This Court declines to follow the dangerous innovations of the district courts relied upon by plaintiff. The law of corporations treats a parent and its subsidiary as two distinct and separate entities unless the parent and subsidiary act in a manner to destroy that separation. A court should walk with great caution when it is suggested that corporate separateness has two different meanings, one in the law of corporations and another in the law of jurisdiction. Drawing such a distinction serves no purpose and only results in confusion and uncertainty. This Court, thus, adheres to the well settled rule that the mere fact that a subsidiary does business within a state does not confer jurisdiction over its nonresident parent, even if that parent is the sole owner of the subsidiary. There is a presumption of corporate separateness that exists unless, from the evidence presented to the Court, the parent so controls the activities of the subsidiary that the latter is only a shell for the former. Lakota Girl Scout Council, 519 F.2d at 637. Moreover, "the fact that the parent may own all of the stock of the subsidiary and even maintain control incident to stock ownership does not justify ignoring the separateness *30 of the two corporations." Escude Cruz, 619 F.2d at 905.
In the case at bar the presumption of corporate separateness remains intact. Corporate separateness of a parent and its subsidiary is recognized, absent illegitimate purposes, unless:
(a) The business transactions, property, employees, bank and other accounts and records of the corporations are intermingled;
(b) The formalities of separate corporate procedures for each corporation are not observed (where the directors and officers of each corporation are common, separate meetings and delineation of the respective capacities in which the common directors and officers are acting should be observed);
(c) The corporation is inadequately financed as a separate unit from the point of view of meeting its normal obligations foreseeable in a business of its size and character, because of either initial inadequate financing or having its earnings drained off so as to keep it in a condition of financial dependency;
(d) The respective enterprises are not held out to the public as separate enterprises;
(e) The policies of the corporation are not directed to its own interests primarily but rather to those of the other corporation.
H. Henn & J. Alexander, Laws of Corporations § 148 at 355-56 (1983). Corporation and Agribusiness are and remain separate corporate entities. Agribusiness itself makes decisions regarding its business goals, annual budget, the terms and prices of the raw materials it buys, and the product it manufactures. Furthermore, Agribusiness raises its own capital, maintains and keeps separate books of account and financial records. Corporation, however, did approve the appointment and salary of Agribusiness's top officers, guaranteed certain loans of Agribusiness, approved certain capital expenditures of Agribusiness and allowed Agribusiness employees to participate with Corporation employees in a joint investment and savings plan. These last activities, in the context of the entire record, are not sufficient for this Court to conclude that Agribusiness is a mere shell for Corporation. Rather the challenged activities of Corporation are simply normal activities incident to the parent's ownership of the subsidiary and do not warrant ignoring the separateness of the two corporations. Escude Cruz, 619 F.2d at 905.
This Court lacks personal jurisdiction over Corporation. Corporation itself owns no property within the state of Missouri; nor transacts any business within this state. In addition, Corporation has not committed an act that would subject it to this Court's jurisdiction by virtue of Missouri's long-arm statute, R.S.Mo. § 506.500. Furthermore, this Court's jurisdiction over Agribusiness, a wholly owned subsidiary of Corporation, does not subject Corporation to the jurisdiction of this Court.
The Court will, therefore, grant the motion of Corporation to dismiss for lack of personal jurisdiction. In addition the Court will lift its order staying discovery on the merits.
Accordingly,
IT IS HEREBY ORDERED that the motion of Syntex Corporation to dismiss for lack of personal jurisdiction be and is GRANTED.
IT IS FURTHER ORDERED that plaintiff's complaint against Syntex Corporation be and is DISMISSED without prejudice.
IT IS FURTHER ORDERED that this Court's order of September 15, 1983, relating to discovery be and is VACATED.

ON MOTION TO DISMISS
This matter is before the Court on the motion of the defendants Northeastern Pharmaceutical and Chemical Company, Inc., Edwin Michaels, John Lee, and Milton Turkel ("NEPACO, et al.") to dismiss the cross-claim of defendant Independent Petrochemical Corporation ("IPC").
*31 This is a private action for response costs brought pursuant to the Comprehensive Environmental Response Compensation and Liability Act of 1980 ("CERCLA"), codified at 42 U.S.C. §§ 9601-9657. Plaintiffs seek to recover allowable response costs under 42 U.S.C. § 9607 incurred by them as a result of their exposure to the chemical agent commonly called dioxin. Defendant IPC has filed a cross-claim against NEPACO, et al. pursuant to Rule 13(g) of the Federal Rules of Civil Procedure. IPC in its cross-claim seeks idemnification or contribution for all amounts, or such part thereof as this Court finds equitable, that may be adjudged to be due to plaintiff from IPC in this action. NEPACO, et al. has moved to dismiss this cross-claim asserting that CERCLA does not allow contribution. The basis for this assertion by NEPACO, et al. rests upon their belief that Missouri law governs this action and their further belief that Missouri law does not allow for either contribution or indemnity among joint tortfeasors.
Because this action is based upon a federal statute, it is federal law that must determine the existence of contribution under CERCLA. See, e.g., Northwest Airlines v. Transport Workers Union, 451 U.S. 77, 90, 101 S.Ct. 1571, 1580, 67 L.Ed.2d 750 (1981); Texas Industries, Inc. v. Radcliff Materials, Inc., 451 U.S. 630, 638, 101 S.Ct. 2061, 2065, 68 L.Ed.2d 500 (1981). The Court will look to the terms of the statute in determining whether a right to contribution exists. CERCLA implicitly recognizes a right to contribution. Title 42 of the United States Code § 9607(e)(2) provides:
Nothing in this title ... shall bar a cause of action that an owner or operator or any other person subject to liability under this section, or a guarantor, has or would have, by reason of subrogation or otherwise against any person.
A provision similar to the above-quoted section was included in the House version of what became CERCLA. H.R.7020, 96th Cong., 2d Sess., U.S.Code Cong. & Admin. News 1980, p. 6119. Representative Gore in speaking about the House version stated that any defendant who paid all the response costs to a plaintiff "would then have the right to go against the other `non-apportioned' defendants for contribution...." 126 Cong.Rec. 26, 785 (1980) (statement by Rep. Gore). In addition, the Justice Department has interpreted § 9607(e)(2) as allowing for contribution among joint tortfeasors. 126 Cong.Rec. 31, 966 (1980). Furthermore, both reported case law, United States v. Chem-Dyne Corp., 572 F.Supp. 802, 807 n. 3 (S.D.Ohio 1983) and scholarly commentary, Note, The Right to Contribution for Response Costs under CERCLA, 60 Notre Dame Law. 345, 361 (1985); Comment, Generator Liability under Superfund for Clean-Up of Abandoned Hazardous Waste Dumpsites, 130 U.Pa.L.Rev. 1229, 1266 n. 184 (1982), support the view that 42 U.S.C. § 9607(e) provides for contribution. Thus, this Court rules that CERCLA allows contribution among joint tortfeasors and will deny the motion to dismiss the cross-claim of IPC.
Accordingly,
IT IS HEREBY ORDERED that the motion of Northeastern Chemical and Pharmaceutical and Chemical Company, Inc., Edwin Michaels, John Lee, and Milton Turkel to dismiss the cross-claim of Independent Petrochemical Corporation be and is DENIED.