The ANSPEC COMPANY, INC., a Michigan corporation, and Hugh J. Montgomery, Plaintiffs,

v.

JOHNSON CONTROLS, INC., a Wisconsin corporation, Hoover Universal, Inc., a Michigan corporation, Hoover Group, Inc., a Delaware corporation, and Ultrasperics, Inc., formerly a Michigan corporation, now merged with Hoover Group, Inc., Defendants.

No. 89–CV–71165–DT.

United States District Court, E.D. Michigan, S.D.

Sept. 25, 1989.

Allyn D. Kantor, Ann F. Goodman, Miller, Canfield, Paddock and Stone, Ann Arbor, Mich., for plaintiffs.

Robert A. Fineman, Joseph M. Polito, Honigman, Miller, Schwartz & Cohn, Ann Arbor, Mich., Jeffrey O. Cerar, Paul E. Gutermann, John B. Bulgozdy, Squire, Sanders & Dempsey, Washington, D.C., W. Robert Chandler, Cross Wrock, Detroit, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

ZATKOFF, District Judge.

This case is currently before the Court on the motion of defendants Johnson Controls, Inc., Hoover Universal, Inc. and Hoover Group, Inc., to dismiss plaintiffs' complaint on two separate grounds. First, defendants claim that plaintiffs have failed to state a federal claim upon which relief can be granted. Secondly, defendants allege that this court lacks subject matter jurisdiction over plaintiffs' state law claims.

### FACTS

Plaintiffs' First Amended Complaint seeks recovery for costs incurred by plaintiffs in order to clean up chemical substances at 122 Enterprise Drive, Scio Township, County of Washtenaw, State of Michigan. Plaintiffs allege that defendant, Ultraspherics, Inc., (hereafter Ultraspherics),

released certain chemicals into the soil as a result of manufacturing operations carried out on the property. According to plaintiff, chemicals were released when Ultraspherics owned and operated the property prior to selling the land in 1978. (Plaintiffs' First Amended Complaint, pg. 10). On July 7, 1978, defendant Ultraspherics then sold the property to plaintiff, Anspec Company, Inc. Anspec subsequently sold the property to plaintiff, Hugh J. Montgomery and Anspec continues to lease the property from Montgomery. Plaintiffs have owned and operated the land since purchasing it from Ultraspherics in 1978.

Five years after Ultraspherics sold the property to plaintiffs, the following transactions occurred. On July 22, 1983, Ultraspherics merged with defendant Hoover Universal Inc., (hereafter Hoover Universal), a Michigan corporation. According to plaintiffs, Ultraspherics was the "surviving" corporation with 100 percent of the outstanding shares of common stock of Hoover Universal. In February of 1985, defendant Johnson Controls, Inc., (hereafter JCI), a Wisconsin corporation, obtained 100 percent of the shares of Hoover Universal. On December 31, 1987, Ultraspherics merged into defendant Hoover Group Inc. (hereafter Hoover). After this merger, Hoover became the surviving corporation and assumed all assets and liabilities of Ultraspherics.

Plaintiffs' complaint seeks recovery under the Comprehensive Environmental Response, Compensation, and Liability Act. 42 U.S.C. § 9607(a) (hereafter referred to as CERCLA). Plaintiffs submit that under CERCLA, defendants are responsible for the costs of clean-up because they were either owners or operators of the facility at 122 Enterprise Drive when the hazardous substances were disposed of, or the defendants are successor corporations of owners and operators and are therefore strictly liable. (Plaintiffs' First Amended Complaint, pg. 10).

Defendants JCI, Hoover Universal and Hoover never owned, occupied or stored chemicals at the 122 Enterprise Drive property. Therefore these moving defendants claim they are not within the classes of persons potentially liable under CERCLA. (Defendants' Brief in Support of Motion to Dismiss, pg. 4). Defendants also assert that since the CERCLA claim does not apply to them, the plaintiffs' state law claims are not within the pendent jurisdiction of the court, and therefore must be dismissed.

## LAW

Congress passed CERCLA in 1980 in order to clean up unsafe hazardous waste sites which threatened public health and the environment. The Act also established the Hazardous Substance Response Trust Fund, (hereafter Superfund), which Congress reauthorized in 1986. 42 U.S.C. § 9607(a). The Superfund provides the resources to the federal government to insure the clean up of hazardous waste sites. The Superfund is financed through excise taxes on chemical and petroleum products. Excise taxes are also assessed against certain corporations.

The Superfund is not the sole means of financing the clean-up of hazardous waste sites. CERCLA specifically provides a list of parties potentially liable for the clean-up costs of a hazardous waste site. The list includes:

(1) the owner and operator of a vessel or a facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport, to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threat-

ened release which causes the incurrence of response costs, of a hazardous substance, shall be liable ... 42 U.S.C. § 9607(a).

## CERCLA CLAIM

■ Defendants JCI, Hoover Universal and Hoover submit that they are not potentially liable parties under CERCLA because they never owned or operated the property at 122 Enterprise Drive. These defendants are also not generators or transporters of hazardous wastes.

Plaintiffs allege that hazardous substances were disposed of at 122 Enterprise Drive during the time Ultraspherics owned the property. As a result of corporate mergers or transformations, plaintiffs claim that the liability of Ultraspherics has now passed on to defendants JCI, Hoover Universal and Hoover as successor corporations of Ultraspherics. (Plaintiffs' Response to Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to State a Claim Upon Which Relief Can Be Granted, pg. 2).

Plaintiffs rely on *Smith Land & Improvement Corporation v. Celotex Corp.*, 851 F.2d 86 (3rd Cir.1988) to submit that liability for environmental clean-up can be imposed on successor corporations. In *Smith Land*, the court studied CERCLA and held that, "Congress intended to impose successor liability on corporations which either have merged with or have consolidated with a corporation that is a responsible party as defined in the Act." *Id.* at 92. According to plaintiffs, successor corporation liability is obviously needed to prevent corporations from constantly rearranging themselves in order to avoid liability under CERCLA.

Even though this Court may agree that successor liability is desirable, that is a legislative policy decision to be made by Congress. Congress specifically limited li-

ability under CERCLA to past and present owners or operators in addition to generators and transporters. Defendants JCI, Hoover Universal and Hoover are not generators or transporters of hazardous wastes. These defendants are also not currently, nor have they previously been, owners or operators of the 122 Enterprise Drive property. Successor corporations are not listed as one of the potentially responsible parties under CERCLA.

The court in *Smith Land* recognized the fact that CERCLA did not address corporate successor liability. *Id.* at 91. However, the court referred to CERCLA as a "hastily conceived and briefly debated piece of legislation ..." and therefore concluded that, "Congress expected the courts to develop a federal common law to supplement the statute." *Id.*

Congress did intend for courts to develop federal common law under CERCLA with regard to strict, joint and several liability as well as the right to contribution.[1] Federal common law was needed in these areas of the law because these provisions were very ambiguous in the original enactment of CERCLA. Congress was not, however, ambiguous with regard to which persons could be liable under CERCLA. Congress explicitly set forth four categories of potentially responsible parties. Even if CERCLA was hastily assembled as the *Smith Land* court has suggested, Congress must still be satisfied with the four categories since no changes were made to the basic structure of CERCLA during the 1986 amendments. The decision in *Smith Land* was based on the false assumption that Congress intended courts to develop federal common law regarding all the provisions in CERCLA. In fact, Congress only intended that the courts develop federal common law for those CERCLA provisions that were ambiguous. The provision concern-

---

**1.** See 126 Cong.Rec. H11773–H11803 (Dec. 3, 1980). (Statement of Rep. Florio), "The liability provisions of this bill do not refer to the terms strict, joint and several liability ... I have concluded that despite the absence of these specific terms, the strict liability standard already approved by this body is preserved. Issues of joint and several liability not resolved by this shall be governed by traditional and evolving principles of common law."

Based upon its legislative history, a right to contribution has also been found to implicitly exist under CERCLA. *Wehner v. Syntex Agribusiness, Inc.*, 616 F.Supp. 27, 31 (E.D.Mo.1985).

ing those persons potentially liable under CERCLA is not ambiguous. Therefore, the development of federal common law in that area of CERCLA is unnecessary.

Plaintiffs suggest that without successor corporation liability, a polluting corporation will be able to merge with another corporation and thereby escape any responsibility it may have had to clean up the environment. As persuasive as that reasoning may be, it cannot be used to expand or extend the four categories of potentially responsible parties that Congress originally envisioned under CERCLA. The policies behind CERCLA are still obtainable without successor corporation liability. The owner and/or operator of the property is potentially liable, the actual polluter is potentially liable and successor corporations, to the extent they are polluters or owners or operators, are still potentially liable. Where a potentially liable party does not exist, the Superfund is used to finance the clean-up.

While changes to the categories of potentially liable parties may be necessary, Congress must be the body to make such changes. Only Congress has the resources to adequately investigate and determine whether or not liability under CERCLA should be imposed on additional parties. Until such time, the courts should not deviate from the four existing categories of potentially liable parties which Congress clearly mandated under CERCLA. For the above reasons, plaintiffs' CERCLA claim is dismissed as to defendants JCI, Hoover Universal and Hoover.

### State Law Claims

■ In addition to the CERCLA claim, plaintiffs also alleged violations of the Michigan Environmental Protection Act. Count III of the complaint alleges nuisance and Count IV alleges fraud. According to the plaintiffs, this Court has pendent jurisdiction over the state claims. Plaintiffs assert that the state law claims arose from the same common nucleus of operative fact as the CERCLA claim. Since the federal and state claims all arose from the same disposal of hazardous substances at 122 Enterprise Drive, plaintiffs submit pendent jurisdiction exists under *United Mine Workers v. Gibbs*, 383 U.S. 715, 727, 86 S.Ct. 1130, 1139–40, 16 L.Ed.2d 218 (1966). In *Gibbs*, the court emphasized that pendent jurisdiction is a doctrine of discretion. *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139. As a result, the court must weigh factors such as judicial economy, convenience, comity and fairness to determine whether or not to exercise pendent jurisdiction over state law claims. *Id.* The Supreme Court in *Gibbs*, stated:

> When the federal law claims have dropped out of the lawsuit in its early stages and only state law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice. *Id.* at 726–727, 86 S.Ct. at 1139.

In the instant case, the federal CERCLA claim has been dismissed leaving behind only state law claims. Since these state law claims will predominate the case in terms of proofs and scope of issues raised, this Court hereby dismisses plaintiffs' state law claims without prejudice.

### CONCLUSION

Based on the foregoing reasons, this Court hereby GRANTS the motion of defendants JCI, Hoover Universal and Hoover to dismiss plaintiffs' complaint for failure to state a federal claim upon which relief can be granted. The Court also DISMISSES plaintiffs' state law claims without prejudice.

IT IS SO ORDERED.