**GRM INDUSTRIES, INC., Plaintiff,**

v.

**WICKES MANUFACTURING COMPANY, Defendant.**

No. G89–30388 CA.

United States District Court, W.D. Michigan, S.D.

Jan. 17, 1990.

Scott H. Hogan, Warner, Norcross & Judd, Grand Rapids, Mich., for plaintiff.

Robert D. VanderLaan, Steven D. Weyhing, Douglas W. Crim, Miller, Canfield, Paddock & Stone, Grand Rapids, Mich., for defendant.

## OPINION

BENJAMIN F. GIBSON, District Judge.

## INTRODUCTION

Plaintiff GRM Industries, Inc. ("GRM") filed the present twelve-count action against defendant Wickes Manufacturing Company ("Wickes") seeking certain response and other costs incurred when GRM removed hazardous wastes from a partially underground storage tank on property leased by GRM. Count 2 of plaintiff's complaint alleges a private right of action under Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), *as amended by* the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C. § 9607. In addition, Counts 7, 8, 9, 10, and 11 of plaintiff's complaint allege pendent state law claims of indemnity, negligence, and misrepresentation. Finally, in Count 12 plaintiff seeks a declaratory judgment under Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2). Presently pending before the Court is defendant's motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1]

---

1. Pursuant to a Stipulation dated November 16, 1989, and an Order dated November 27, 1989, the Court dismissed Counts 1, 3, 4, 5, and 6, without prejudice.

## FACTS

Plaintiff GRM brought the instant action seeking reimbursement for costs of removal of hazardous wastes from a large partially underground plating and hazardous wastes storage tank and the subsequent cleaning and removal of the tank (collectively the "removal actions") at 420 50th Street SW, Grand Rapids, Michigan (the "Site"). Plaintiff claims that defendant Wickes wrongfully and unfairly refused to participate in and has refused to reimburse GRM for the removal actions. In addition, plaintiff seeks a declaratory judgment under Section 113(g)(2) that defendant caused and created the hazardous wastes, that defendant was responsible for the removal of such wastes, and that defendant is responsible and liable for potential further cleanup costs. *See* 42 U.S.C. § 9613(g)(2).

The underlying facts, although not entirely clear from the pleadings and parties' briefs, are as follows. Crampton Manufacturing Company and the Grand Rapids Brass & Plating Company owned the Site and conducted manufacturing operations from on or about July 1965 through December 1970. Gulf & Western Manufacturing Company ("G & W") was the next owner of the Site and continued manufacturing operations until August 24, 1983, when it sold the Site to GRM's predecessor, the Grand Rapids Metal Craft Division of the F.L. Jacobs Company. Further clarification shows that in fact G & W apparently sold the Site to HRT, Ltd., who leased the Site to F.L. Jacobs immediately after the purchase, and then to GRM. GRM leased the Site from HRT Ltd. from late 1983 until the present.

Crampton, Grand Rapids Brass & Plating, and G & W generated the hazardous wastes and disposed of the wastes in the storage tank. The tank was last used in 1973. On September 12, 1985, Wickes purchased all the shares of G & W's stock.

GRM, who never used the tank, discovered the storage tank in the spring of 1986. Pursuant to Michigan Department of Natural Resources requirements and after finding that the stored wastes were considered hazardous, GRM conducted the removal actions, incurring substantial expenses.

In its motion to dismiss, Wickes contends that it never owned the Site, performed operations at the Site, or carried on waste disposal activities. Wickes asserts that its only connection to the Site is the purchase of G & W's stock twelve years after G & W sold the Site. Thus, Wickes contends that the only basis for liability could be corporate successor liability. However, relying on *Anspec Co. v. Johnson Controls, Inc.*, 734 F.Supp. 793 (E.D.Mich.1989) (successor corporation not a potentially liable party under CERCLA), Wickes argues that as the successor corporation of G & W, it is not within the statutory class of potentially liable persons under CERCLA. As a result, Wickes argues that dismissal of this action is warranted and a declaratory judgment is not appropriate.

Plaintiff responds that Wickes is liable under CERCLA as the corporate successor of G & W for the activities of G & W, a potentially liable party. *See Smith Land & Improvement Corp. v. Celotex Corp.*, 851 F.2d 86 (3d Cir.1988) (general doctrine of corporate successor liability appropriate in CERCLA action, thus successor liability imposed on corporation which merged or consolidated with responsible party), *cert. denied*, 488 U.S. 1029, 109 S.Ct. 837, 102 L.Ed.2d 969 (1989). In addition, plaintiff asserts that under Section 113(g)(2), a declaratory judgment must issue against Wickes as a potentially liable party.

The Court having reviewed the entire record, plaintiff's complaint, defendant's motion, the responsive and supplemental briefs of both parties, and other relevant evidence, is now prepared to render its decision.

## STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) should be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

The Court's inquiry at this point, before the reception of any evidence by affidavit or admission, is merely whether the challenged pleading sets forth allegations sufficient to make out the elements of a right to relief. In making this determination, the allegations in the pleading are taken at "face value," *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 515, 92 S.Ct. 609, 614, 30 L.Ed.2d 642 (1972), and should be construed favorably to the pleader. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). "[W]ell pleaded facts are taken as true, and the complaint is construed liberally in favor of the party opposing the motion." *Davis H. Elliot Co. v. Caribbean Utilities Co.*, 513 F.2d 1176, 1182 (6th Cir.1975). All reasonable inferences which might be drawn from the pleading must be indulged. *Fitzke v. Shappell*, 468 F.2d 1072, 1076 n. 6 (6th Cir.1972).

Provided that the claim for relief fulfills the requirements of Federal Rule of Civil Procedure 8(a), it "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

## ANALYSIS

CERCLA was enacted to provide the nation a comprehensive mechanism for the cleanup "of inactive hazardous waste sites and to establish a program for appropriate environmental response action to protect public health and the environment from the dangers posed by such sites." H.R.Rep. No. 96–1016, 96th Cong., 2d Sess., pt. I, at 17, *reprinted in* 1980 U.S.Code Cong. & Admin.News 6119, 6119. *See also* 40 C.F.R. §§ 300.61 *et seq.* (National Oil and Hazardous Substances Pollution Contingency Plan). A liberal construction of CERCLA aids in accomplishing the beneficial goals for which it was enacted. *United States v. Aceto Agricultural Chemicals Corp.*, 872 F.2d 1373, 1380 (8th Cir.1989); *Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 805 F.2d 1074, 1081 (1st Cir.

1986). Further, CERCLA provides a private cause of action to recover response costs as a legislative incentive for potentially responsible parties to accept responsibility and effect cleanup without the necessity of federal intervention. *See* 42 U.S.C. § 9607(a)(2)(B).

CERCLA attempts "to facilitate the prompt cleanup of hazardous waste sites by placing the ultimate financial responsibility for cleanup on those responsible for the hazardous wastes." *Walls v. Waste Resources Corp.*, 761 F.2d 311, 318 (6th Cir.1985). The costs of hazardous waste cleanup must be borne by either the entities which caused the condition or taxpayers through federal funds. Under CERCLA, the burden should fall on taxpayers "only when the responsible parties lack[ ] the wherewithal to meet their obligations." *Smith Land & Improvement Corp. v. Celotex Corp.*, 851 F.2d 86, 92 (3d Cir.1988), *cert. denied*, 488 U.S. 1029, 109 S.Ct. 837, 102 L.Ed.2d 969 (1989). "There is no reason why a corporation should escape liability for costs that their pollution imposes on society." *Kelley v. Thomas Solvent Co.*, 725 F.Supp. 1446 (W.D.Mich.1988).

Section 107 lists the parties who may be potentially liable for cleanup costs at a hazardous waste site, including:

(1) the owner and operator of a vessel or a facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such

person, from which there is a release, or a threatened release which causes the incurrence of response costs, of hazardous substance,....

42 U.S.C. § 9607(a). A "person" includes "an individual, firm, corporation, association, [or] partnership,...." 42 U.S.C. § 9601(21). It appears undisputed that G & W was a "person who at the time of disposal of any hazardous substance owned or operated [the Site] at which such hazardous substances were disposed of," and as such is a potentially liable party under CERCLA. Thus, the issue before the Court is whether Wickes is also a potentially liable party as the corporate successor of G & W through the purchase of all of G & W's stock.

■ Under traditional corporate successor liability principles, the purchaser of a corporation's assets does not assume the liabilities of the seller unless (1) the purchaser expressly or impliedly agrees to assume the seller's obligations; (2) there is a consolidation or merger of the corporations; (3) the purchaser is merely a continuation of the selling corporation; or (4) the transaction is entered into fraudulently. *See Golden State Bottling Co. v. N.L.R.B.,* 414 U.S. 168, 182 n. 5, 94 S.Ct. 414, 424 n. 5, 38 L.Ed.2d 388 (1973); *Conn. v. Fales Division of Mathewson Corp.,* 835 F.2d 145, 146 (6th Cir.1987); 15 W. Fletcher, Cyclopedia of the Law of Private Corporations § 7122 (rev. perm. ed. 1983).[2]

■ However, where a corporation is acquired through the purchase of all of its outstanding stock, the corporate entity remains intact and retains it liabilities, despite the change of ownership. "Changes in ownership of a corporation's stock will not affect the rights and obligations of the company itself. The corporation survives as an entity separate and distinct from its shareholders even if all the stock is purchased by another corporation." *Smith Land,* 851 F.2d at 91.

■ Relying on *Anspec Co. v. Johnson Controls, Inc.,* 734 F.Supp. 793 (E.D.Mich. 1989), Wickes argues it is not appropriate for the Court to impose liability on it as the corporate successor of G & W since Wickes never owned the Site, possessed or performed any operations at the Site, or carried on waste disposal activities at the Site. Wickes contends that the mere fact that it purchased G & W's stock twelve years after G & W performed such waste disposal activities is not sufficient to create liability.

In *Anspec,* the court rejected imposing successor liability finding that under CERCLA the potentially responsible parties are explicitly listed in Section 107(a). The court noted that the owner and/or operator of the property, the actual polluter, and the successor corporation if it is a polluter, owner or operator are still potentially liable. *Anspec,* at 796. Further, the court noted that "[w]here a potentially liable party does not exist, the Superfund is used to finance the clean-up." *Id.* Thus, the court held that Congress and not the courts should impose liability on any additional parties. *Id.* at 796.

The Court rejects the decision in *Anspec* as inconsistent with the remedial purposes of CERCLA. The Court finds that successor liability under traditional concepts is consistent with principles of equity and the underlying purposes of CERCLA. To rule otherwise would allow a corporation to

**2.** The Court finds instructive the factors enunciated by the Sixth Circuit to evaluate successor liability in the labor context. The relevant factors include:

(1) whether the successor company had notice of the charge, (2) the ability of the predecessor to provide relief, (3) whether there has been a substantial continuity of business operations, (4) whether the new employer uses the same plant, (5) whether he uses the same or substantially the same work force, (6) whether he uses the same or substantially the same supervisory personnel, (7) whether the same jobs exist under substantially the same working conditions, (8) whether he uses the same machinery, equipment and methods of production and (9) whether he produces the same product.

*Terco, Inc. v. Federal Coal Mine Safety & Health Review Commission,* 839 F.2d 236, 239 (6th Cir. 1987), *cert. denied,* 488 U.S. 818, 109 S.Ct. 57, 102 L.Ed.2d 36 (1988); *Rabidue v. Osceola Refining Co.,* 805 F.2d 611, 616 (6th Cir.1986), *cert. denied,* 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987); *EEOC v. MacMillan Bloedel Containers, Inc.,* 503 F.2d 1086, 1094 (6th Cir.1974).

avoid CERCLA liability by carefully crafting corporate reorganizations. Accordingly, since the facts of this action may establish that defendant Wickes should be held liable as the corporate successor of a potentially liable party, defendant's motion to dismiss Count 2 is denied.

Defendant also seeks to dismiss Count 12 of plaintiff's complaint which seeks a declaratory judgment under Section 113(g)(2) of CERCLA. Section 113 provides that in an action for recovery of costs under Section 9607, "the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages." 42 U.S.C. § 9613(g)(2). The Court finds that a declaratory judgment may be appropriate in this case if defendant Wickes is held liable as the corporate successor of G & W under Count 2. Accordingly, since the Court denied defendant's motion to dismiss Count 2 for further factual development, the Court likewise will deny defendant's motion to dismiss Count 12.

## PENDENT STATE CLAIMS

Plaintiff's complaint alleges pendent state claims of indemnity, negligence, and misrepresentation in Counts 7, 8, 9, 10, and 11 of its complaint. While this Court may exercise its pendent jurisdiction to hear a state law claim that is related to a federal cause of action properly before the Court, the decision whether to take jurisdiction of such claims is committed to the sound discretion of the district court. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

The justification for the Court's exercise of pendent jurisdiction "lies in considerations of judicial economy, convenience and fairness to litigants." *Id.* at 726, 86 S.Ct. at 1139. Although plaintiff's federal and state law claims arise out of the same "common nucleus of operative fact," *see id.* at 725, 86 S.Ct. at 1138, the Court finds that trial of the state and federal claims will not result in more economical use of judicial resources or greater fairness to the litigants. Because the federal and state claims are established by different elements of proof, the inclusion of the state claims in this action greatly increases the complexity of the case and increases the time and difficulty of presenting the case to a jury. It is the Court's opinion that this greater complexity with its attendant demands on this Court outweighs any advantage that would be gained by presenting the state and federal claims in the same action and increases the likelihood of confusing the jury. Consequently, the Court is persuaded that the better procedure is to dismiss the pendent state law claims in Counts 7, 8, 9, 10, and 11, without prejudice, so that plaintiff may assert such claims in state court.

## CONCLUSION

For the reasons stated, the Court concludes that defendant's motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted is granted in part and denied in part. The Court denies defendant's motion to dismiss Counts 2 and 12. The Court grants defendant's motion to dismiss Counts 7, 8, 9, 10, and 11, without prejudice so that plaintiff may assert such claims in state court.