891 F.2d 414
 30 ERC 2041, 20 Envtl. L. Rep. 20,432
 HUDSON RIVER SLOOP CLEARWATER, INC., The Sierra Club, Inc.,
Friends of the Earth, Inc., American Littoral Society, Inc.,
Physicians For Social Responsibility/NYC, Inc., New York
Public Interest Research Group, Inc., New York Lawyers
Alliance For Nuclear Arms Control, Miriam Friedlander,
Member of the New York City Council, Ruth W. Messinger,
Member of the New York City Council, Carol Greitzer, Member
of the New York City Council, Julia Harrison, Member of the
New York City Council, Arthur Katzman, Member of the New
York City Council, Carolyn B. Maloney, Member of the New
York City Council, Stanley E. Michels, Member of the New
York City Council, Dr. E. Thomas Henkel, Robert McAndrew,
and John Worlock, Plaintiffs-Appellants,
v.
DEPARTMENT OF the NAVY, William L. Ball, III, as Secretary
of the Department of the Navy, Everette Pyatt, as Assistant
Secretary of the Department of the Navy, Admiral Carisele
A.H. Trost, as Chief of Naval Operations, Department of
Defense, Frank Carlucci, as Secretary of the Department of
Defense and Jack Katzen, as Assistant Secretary of the
Department of Defense, Defendants-Appellees.
 No. 188, Docket 89-6121.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 11, 1989.
Decided Dec. 5, 1989.
 
 Leonard M. Marks, New York City (Alan R. Friedman, Thomas P. McCaffrey; Gold, Farrell & Marks, New York City, of counsel), for plaintiffs-appellants.
 Robin Greenwald, Asst. U.S. Atty., E.D.N.Y., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty., E.D.N.Y., Brooklyn, N.Y., of counsel), for defendants-appellees.
 Henry Mark Holzer, Brooklyn Law School, Brooklyn, N.Y. (Local Counsel); Daniel J. Popeo, Paul D. Kamenar, Washington Legal Foundation, Washington, D.C., filed a brief for amici curiae Washington Legal Foundation and Allied Educational Foundation in Support of appellees.
 Before CARDAMONE and MAHONEY, Circuit Judges and POLLACK, District Judge.*
 CARDAMONE, Circuit Judge:
 
 
 1
 With visions of the tragic consequences that eventuated in December 1941 when an entire naval fleet congregated in one harbor, the Navy has since emphasized dispersal. In 1982 it adopted the Strategic Homeport Concept that effectively divides the U.S. fleet into smaller action groups and places them in ports and harbors scattered geographically. The hope is that this approach will improve the Navy's ability to respond and decrease its vulnerability. Whether or not the action group harbored at Staten Island, New York carries nuclear weapons is the gnawing question that prompted this lawsuit.
 
 BACKGROUND
 
 2
 Appellants--Hudson River Sloop Clearwater, Inc., the Sierra Club, Inc., Friends of the Earth, Inc., et al.--are a coalition of environmental and arms control groups, seven members of the New York City Council, and individual homeowners (collectively plaintiffs or appellants) who live in the area surrounding the site of the U.S. Navy's proposed New York Harbor Homeport. Appellees are the U.S. Department of the Navy, U.S. Department of Defense, the Secretaries of the Navy and Defense and other high ranking officials with those Departments (collectively Navy or appellees).
 
 
 3
 On July 29, 1983 the Navy announced that it had chosen the Stapleton-Fort Wadsworth Complex in Staten Island, New York as its preferred site for the new homeport for an American battleship, the U.S.S. Iowa, and its accompanying six ship surface action group that includes an aircraft carrier, three destroyers and two frigates. Some of the ships to be berthed at the Staten Island Homeport are capable of carrying nuclear weapons. The Navy issued a Draft Environmental Impact Statement (DEIS) for the Homeport plan in October 1984 and, after permitting the required public comment period, issued its Final Environmental Impact Statement (FEIS) on February 1, 1985.
 
 
 4
 Most of the public comments received expressed serious concerns regarding the risks attendant upon the deployment of U.S. Navy warships armed with nuclear weapons in New York City's harbor, of which Staten Island is a part. Neither the DEIS nor the FEIS discussed nuclear weapons or the environmental impact of deploying them at the Homeport, except to state that national security interests preclude the Navy from confirming or denying the presence of nuclear weapons aboard any particular U.S. Navy ship. See Chief of Naval Operations (OPNAV) Instructions (s)5513.9B, 5721.1D (27 July 1984). The effect of these instructions, the Navy asserts, is to deny any potential enemy important information regarding American weapons and their location, and similarly to deny information to a potential saboteur who may intend to destroy, incapacitate or capture such weapons.
 
 
 5
 On March 14, 1985 the Navy issued a Record of Decision announcing its intention to proceed with the Homeport project as set forth in the FEIS. On December 27, 1985 it issued a supplemental FEIS addressing the decision to construct housing facilities for Homeport personnel. Its supplemental FEIS was released on March 21, 1986 and a final decision regarding the construction and operation of the Homeport issued on August 20, 1986. Six weeks later--on October 3, 1986--appellants commenced the instant litigation in the United States District Court for the Eastern District of New York (Sifton, J.).
 
 
 6
 The major allegations in the complaint relate to the decision to proceed with the construction and operation of the Homeport. Plaintiffs assert that the Navy did not comply with either the Fish and Wildlife Coordination Act, 16 U.S.C. § 662(b), or with the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. § 4321. Section 102(2)(C) of NEPA, 42 U.S.C. § 4332(2)(C), requires federal agencies to consider the environmental impact of proposals for legislation and other major federal actions. The NEPA claims allege that the Navy failed to consider adequately: (i) the effects of the construction of the Homeport on archaeologically sensitive areas, (ii) the effects of construction on historic properties, (iii) a safety zone between conventional weapons and populated areas, (iv) the effects of the storage and transportation of conventional explosives, and that it had failed to comply with NEPA's public disclosure requirement in its FEIS by failing to discuss the environmental impact of stationing nuclear weapons at the Homeport. This last claim (the "public disclosure" claim) is one of the two NEPA claims before us.
 
 
 7
 On April 28, 1987 Judge Sifton granted the Navy's motion for partial summary judgment on the public disclosure claim. Hudson River Sloop Clearwater, Inc. v. Department of Navy, 659 F.Supp. 674, 687 (E.D.N.Y.1987). On September 23, 1988 the district court granted appellants' motion for leave to file a supplemental amended complaint alleging that the Navy failed to comply with NEPA--independently of its public disclosure requirements--when it allegedly neglected to integrate environmental concerns respecting the presence of nuclear weapons into its internal, non-public decisionmaking process. This "internal decision" claim is the second NEPA claim raised on this appeal. In an order dated May 1, 1989, the district court dismissed the internal decision cause of action for lack of subject matter jurisdiction, holding that the "national security doctrine," Totten v. United States, 92 U.S. 105, 23 L.Ed. 605 (1875), barred plaintiffs from bringing an action on that claim in federal court. Memorandum and Order at 12-13, Hudson River Sloop Clearwater, Inc., et al. v. Department of Navy, No. 86-3292 (E.D.N.Y. May 4, 1989).
 
 
 8
 On May 25, 1989, Judge Sifton then entered judgment on both the public disclosure and internal decision claims, certifying them under Fed.R.Civ.P. 54(b) as final for purposes of appeal. Memorandum and Order at 2-3, Hudson River Sloop Clearwater, Inc., et al. v. Department of Navy, No. 86-3292 (E.D.N.Y. May 25, 1989). This appeal and cross-appeal followed. We affirm.
 
 DISCUSSION
 I. Rule 54(b) Certification
 
 9
 Before analyzing the merits of the public disclosure and internal decision claims raised by appellants, we first consider appellees' challenge to our subject matter jurisdiction to entertain this appeal. Because the district court certified its judgment as final under Fed.R.Civ.P. 54(b), we begin discussion there.
 
 
 10
 Rule 54(b) permits the district court to "direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." Id. Appellees urge that the decision to grant Rule 54(b) certification was deficient on three grounds: (1) that the claims on appeal are not distinct and separate claims from those that remain to be litigated in the district court; (2) that appellants face no threat of hardship or injustice that would be caused by delaying this appeal; (3) that the district court failed to include a reasoned explanation, required by Rule 54(b), as to why immediate appeal is appropriate.
 
 
 11
 A. Does More Than One Claim Exist?
 
 
 12
 In deciding whether the district court correctly determined that more than one claim exists for purposes of Rule 54(b), our scope of review is broad. See Curtiss-Wright Corp. v. General Electric Co., 446 U.S. 1, 10, 100 S.Ct. 1460, 1466, 64 L.Ed.2d 1 (1980); Avondale Indus., Inc. v. The Travelers Indemnity Co., 887 F.2d 1200 (2d Cir.1989); 10 Wright, Miller & Kane, Federal Practice and Procedure, Civil 2d § 2655, at 42-43 (1983). The wide deference accorded a trial court under Rule 54(b) is usually reserved for its determination that no just cause for delay exists. See Curtiss-Wright, 446 U.S. at 10, 100 S.Ct. at 1466. Therefore, we must examine de novo the relationship between plaintiffs' claims to determine whether they are sufficiently separate and distinct as to lend themselves to review as single units, or whether they are so interrelated and dependent upon each other as to be one indivisible whole.
 
 
 13
 In Gottesman v. General Motors Corp., 401 F.2d 510, 512 (2d Cir.1968), we defined the word "claim" in the context of Rule 54(b) as " 'the aggregate of operative facts which give rise to a right enforceable in the courts.' " (quoting Original Ballet Russe v. Ballet Theatre, 133 F.2d 187, 189 (2d Cir.1943)). Gottesman was a stockholders' derivative suit that contained 14 causes of action. These causes of action together alleged, in essence, that E.I. duPont deNemours & Co. had dominated and controlled General Motors in the purchase of duPont products, including automotive fabrics and finishes, Freon refrigerant, refrigerator finishes, and tetraethyl lead. The trial court decided to litigate each allegation of coercion separately, and rendered final judgment on the question of automotive fabrics and finishes first. We held that Rule 54(b) certification was proper, and that there were separate claims, since: "Each product involves separate markets and commercial considerations. Different exhibits, proof and witnesses will be necessary; different sets of operative facts will determine the result." Id. at 512.
 
 
 14
 In Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 76 S.Ct. 895, 100 L.Ed. 1297 (1956), the Supreme Court held that separate counts of a plaintiff's four-count complaint were separate claims for purposes of Rule 54(b) in a case where plaintiff's first count sought damages under the antitrust laws for injury to three of his commercial ventures, and the remaining counts sought recovery on common law grounds for the injury sustained by each individual venture. Id. at 436, 76 S.Ct. at 900.
 
 
 15
 In contrast, the cases upon which appellees rely to show that only one claim exists involve judgments on claims which were dependent upon other claims remaining in the litigation. See Cinerama, Inc. v. Sweet Music, S.A., 482 F.2d 66 (2d Cir.1973) (claim for prejudgment interest dependent upon liability for principal); Aetna Casualty & Sur. Co. v. Giesow, 412 F.2d 468 (2d Cir.1969) (claim for attorney's fees dependent upon underlying claim for damages and therefore not separate for Rule 54(b) purposes); see also Minority Police Officers Ass'n v. City of South Bend, Indiana, 721 F.2d 197 (7th Cir.1983) (claims not sufficiently separate for purposes of Rule 54(b) if the facts they depend on are "largely the same").
 
 
 16
 When the certified claims are based upon factual and legal questions that are distinct from those questions remaining before the trial court the certified claims may be considered separate claims under Rule 54(b). The separate and distinct test is satisfied in the case at hand. None of the causes of action remaining in the district court are concerned with the deployment of nuclear weapons or information declared classified by the Navy. Although the claims on appeal stem from the same general objection that appellants make against the Navy (that it failed to consider adequately the environmental impacts of building and operating the proposed Homeport), they involve a unique factual scenario--deployment of nuclear weapons--and raise legal issues wholly distinct from those that remain for trial.
 
 
 17
 Further, it is important to keep in mind the purposes and policies behind the distinct and separate claims requirement of Rule 54(b), namely the desire to avoid redundant review of multiple appeals based on the same underlying facts and similar issues of law. See Curtiss-Wright, 446 U.S. at 8, 100 S.Ct. at 1465. In this case, any subsequent appeals on the remaining claims (those denied summary judgment) will involve questions of fact and law entirely distinct from the issues now before us.B. The District Court's Determination That There Was No
 
 Just Reason for Delay
 
 18
 The other aspect of the Rule 54(b) certification--that there was no just reason for delaying final judgment on the appealed claims--is one concerning which we accord considerable deference to the district court because of its more intimate knowledge of the factual circumstances of the case. See Curtiss-Wright, 446 U.S. at 10, 100 S.Ct. at 1466; Avondale, 887 F.2d 1200. In entering final judgment on the internal decision claim based on the May 1 order, Judge Sifton stated that "given the nature of the issues presented, there is reason for expedited review of the novel legal issues presented, given their public import." He also found that there was no just reason for delay in entering a final judgment in his decision of April 28, 1987 granting summary judgment against appellants' public disclosure claim since that claim is integrally connected to the internal decision claim, and thus, "[e]ntry of final judgment on both claims together, rather than only on the second claim ... would promote rather than frustrate 'the policy against piecemeal appeals' and serve '[t]he interests of sound judicial administration and efficiency....' " Memorandum and Order, at 3 (E.D.N.Y. May 25, 1989) (citations omitted).
 
 
 19
 We agree that the issues on appeal are unique and that their resolution is of public import. Whether or not the Navy actually plans on deploying these weapons, or even whether appellants are ultimately unsuccessful on appeal, are not factors that should be considered in determining the issue of no just cause for delay. The very threat that appellants seek to enjoin through litigating the certified claims--the threat of the alleged presence of nuclear weapons in New York Harbor--could become a reality in the time it takes to try the remaining claims in the district court.
 
 
 20
 Appellees argue, relying on Brunswick Corp. v. Sheridan, 582 F.2d 175 (2d Cir.1978), that "there must be some danger of hardship or injustice through delay which would be alleviated by immediate appeal" before Rule 54(b) certification is appropriate, and that it should be granted only in "the infrequent harsh case." Id. at 183. Curtiss-Wright rejected such a restricted scope for Rule 54(b): "However accurate it may be as a description of cases qualifying for Rule 54(b) treatment, the phrase 'infrequent harsh case' in isolation is neither workable nor entirely reliable as a benchmark for appellate review." 446 U.S. at 10, 100 S.Ct. at 1466. Although hardship and injustice are not thereby eliminated as factors that should be considered when a district court decides whether to grant certification under Rule 54(b), the Supreme Court cautions us to review the sufficiency of these factors within the broad scope of the district court's discretion to see if certification is in the "interest of sound judicial administration." Id.
 
 
 21
 We need not now decide if Curtiss-Wright has eliminated the requirement for some showing of hardship, since we believe that a sufficient showing of hardship were the appeal delayed has been made. Hence, the district court's finding that these two claims were ripe for final judgment was not an abuse of its discretion, and its certification to that affect will not be disturbed.
 
 
 22
 C. Rule 54(b)'s Requirement of a Reasoned Explanation
 
 
 23
 Although the district court's explanation for granting Rule 54(b) certification was brief, it was sufficient. Obviously, mere recitation of the language of the rule that "there is no just reason for delay" is insufficient to certify a claim under Rule 54(b). See Cullen v. Margiotta, 811 F.2d 698, 711 (2d Cir.), cert. denied, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987). But here Judge Sifton referred to the public import of the issue on appeal, and explained that sound judicial administration warranted Rule 54(b) certification because the certified claims were easily separated from those remaining. Where, as here, the certified judgments are based entirely upon distinct questions of law and the hardship to appellants that would result from delaying their appeal is conspicuous, brief remarks by the district court are sufficient to invoke the obvious.II. The Public Disclosure Claim
 
 
 24
 Plaintiffs raise two arguments respecting the public disclosure claim. From the April 28 grant of partial summary judgment, they contend that on the merits summary judgment was not warranted, and that their Rule 56(f) motion to conduct discovery should have been granted before the district court granted appellees' motion for summary judgment. We cannot agree with either of these arguments.
 
 A. Summary Judgment
 
 25
 Discussion of the merits of granting summary judgment on the public disclosure claim must be guided by Weinberger v. Catholic Action of Hawaii/Peace Educ. Project, 454 U.S. 139, 102 S.Ct. 197, 70 L.Ed.2d 298 (1981). There, the Supreme Court identified two obligations that NEPA § 102(2)(C) places on government agencies: (1) "to inject environmental considerations into the federal agency's decisionmaking process," and (2) "to inform the public that the agency has considered environmental concerns in its decisionmaking process." Id. at 143 (emphasis added). Appellants' public disclosure claim is based on the second requirement of § 102(2)(C), i.e., that the Navy failed to include in its public FEIS any analysis of the impact of deploying nuclear weapons at the Homeport.
 
 
 26
 Relying on the Supreme Court's decision in Catholic Action, the district court granted partial summary judgment for the appellees. In Catholic Action plaintiffs sought an injunction to block the construction of a nuclear weapons capable storage facility until the Navy issued an EIS addressing the risks of that sort of storage. The district court held that the Navy did not need to disclose whether it intended to deploy nuclear weapons at the facility and that it therefore need not issue an EIS addressing nuclear deployment. Catholic Action of Hawaii/Peace Educ. Project v. Brown, 468 F.Supp. 190, 193 (D.Hawaii 1979). The Ninth Circuit reversed the district court concluding that § 102(2)(C) requires the Navy to prepare a "Hypothetical Environmental Impact Statement" when it proposes construction of a facility capable of storing nuclear weapons. 643 F.2d 569, 572 (1980). It further held that requiring a hypothetical EIS did not breach the Navy's policy of "nuclear ambiguity" because it did not reveal anything "of which the public is not already aware," namely, that nuclear weapons might be stored in a nuclear capable facility.
 
 
 27
 The Supreme Court reversed the Ninth Circuit stating that Congress, in enacting § 102(2)(C), had already set the balance between the public's need to be informed and the government's need for secrecy. NEPA provides, the Court noted, that any information kept from the public under the exemptions in the Freedom of Information Act (FOIA), 5 U.S.C. § 552, need not be disclosed. 454 U.S. at 145, 102 S.Ct. at 202-03. FOIA's exemption (1), 5 U.S.C. § 552(b)(1), allows the government to deny public disclosure of matters properly classified pursuant to an executive order in the interest of national defense. The Court held that "virtually all information relating to the storage of nuclear weapons is classified" pursuant to Executive Order No. 12065 and thus is exempt from NEPA's public disclosure requirements.[1]
 
 
 28
 The Court also concluded that the Navy was not required to include in a publicly disclosed EIS any reference to the presence of nuclear weapons when their presence was merely "contemplated." It was only required to do so when deployment of such weapons was actually "proposed" publicly. Id. at 146, 102 S.Ct. at 203. The Court nonetheless found that even when the Navy is not required to issue a public EIS concerning undisclosed and classified deployment of nuclear weapons, the first requirement of NEPA § 102(2)(C)--that the agency inject environmental considerations into its decisionmaking process--requires the Navy to assess the impact of deploying nuclear weapons in its own internal environmental impact analysis. This internal decisionmaking process, and the findings regarding classified aspects of the proposal, need not be publicly disclosed. Id. Finally, the Court noted that the Ninth Circuit's hypothetical EIS requirement created an extra-legislative requirement to prepare "a document that would not exist save for what [the Court of Appeals] thought to be NEPA's public disclosure requirements." Id. at 145, 102 S.Ct. at 202-03.
 
 
 29
 In the case at bar, the Navy asserted that information related to its deployment of nuclear weapons is exempted from public disclosure under FOIA exemptions codified at § 552(b)(1) and (b)(3). Exemption (3) is similar to exemption (1), except that (3) applies to information classified by statute rather than by executive order. Appellees assert that the Atomic Energy Act, 42 U.S.C. § 2014(y), exempts from public disclosure information concerning "the design, manufacture, or utilization" of nuclear weapons, and that exemption (3) therefore bars public disclosure. The district court did not decide this issue, finding a sufficient foundation for summary judgment in exemption (1).
 
 
 30
 Claiming that Catholic Action does not require summary judgment for the Navy in the instant case, appellants contend that the Navy waived its "neither confirm nor deny" policy with respect to the New York Harbor Homeport through the admissions of Navy officials testifying publicly before Congress, and through the unofficial statements of a retired Rear Admiral. See 659 F.Supp. at 681. Thus, they urge that FOIA exemptions (1) and (3) are inapplicable since the Navy has "declassified" the fact that nuclear weapons will in fact be deployed at the Homeport.
 
 
 31
 In making this argument appellants rely on a series of cases holding that FOIA exemptions (1) and (3) no longer support exemption when the information sought has previously been made public through official disclosures. See, e.g., Afshar v. Department of State, 702 F.2d 1125, 1130-33 (D.C.Cir.1983); Nuclear Control Institute v. U.S. Nuclear Regulatory Comm'n, 563 F.Supp. 768, 771 (D.D.C.1983); Fitzgibbon v. Central Intelligence Agency, 578 F.Supp. 704, 715 (D.D.C.1983); see also National Lawyers Guild v. Attorney General, 96 F.R.D. 390, 402 (S.D.N.Y.1982) (evidentiary privilege). These cases hold that the recited exemptions may not be invoked to prevent public disclosure when the government has officially disclosed the specific information being sought. See Afshar, 702 F.2d at 1130 (plaintiff bears the burden of showing specific information in the public domain that duplicates the information withheld); Fitzgibbon, 578 F.Supp. at 715 (plaintiff must show that information in public domain is as specific as that which is being sought, relates to the same time period, and has been the result of an official disclosure (citing Afshar, 702 F.2d at 1133)); National Lawyers Guild, 96 F.R.D. at 402 (prior disclosure of similar, as opposed to specific, information to that being sought does not waive the state secrets privilege).
 
 
 32
 The district court ruled that the official statements upon which appellants rely to show that the Navy waived its FOIA exemptions did not disclose the specific information which they presently seek. It found that the testimony of various high-ranking Navy officials before Congress did not establish that the Navy has officially proposed to deploy nuclear weapons at the New York Harbor Homeport, but confirm only what the Navy already admits: that the ships to be stationed at the Homeport are capable of carrying nuclear weapons. 659 F.Supp. at 681. We agree. Appellants also relied upon the affidavit of retired Rear Admiral Carroll to establish that the Navy has publicly disclosed information making FOIA national security exemptions not pertinent. As the district court aptly pointed out, Admiral Carroll's statements cannot effect an official disclosure of information since he is no longer an active naval officer. See Afshar, 702 F.2d at 1133-34.
 
 
 33
 Admiral Carroll's affidavit expresses only his personal conclusions based on speculation. We grant that his speculations are founded on many years of experience in the Navy where he served as a high-ranking officer, and for that reason perhaps deserve credit beyond that afforded the conclusions of those not formerly privy to official information. Yet, however credible these insights, they do not translate into official disclosures. See Laine v. Weinberger, 541 F.Supp. 599, 602-03 (C.D.Cal.1982) (speculation based on the nuclear capability of a facility insufficient to establish that Navy disclosed deploying nuclear weapons there, Navy may rely on FOIA exemptions (1) and (3)). Officials no longer serving with an executive branch department cannot continue to disclose official agency policy, and certainly they cannot establish what is agency policy through speculation, no matter how reasonable it may appear to be. As a consequence, Admiral Carroll's disclosures did not affect the applicability of the FOIA exemption, and summary judgment was properly granted on the merits of the public disclosure claim.
 
 B. Rule 56(f)
 
 34
 Prior to the district court's granting of summary judgment to appellees on the public disclosure claim, appellants requested time to conduct discovery, pursuant to Fed.R.Civ.P. 56(f). The district court denied this request, observing that the information appellants sought was not material to their stated opposition. 659 F.Supp at 684. Rule 56(f) states that when it appears that the party opposing a motion for summary judgment cannot "present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit ... discovery to be had...." Thus, a party seeking such discovery must file an affidavit explaining (1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort the affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts. Burlington Coat Factory Warehouse Corp. v. Esprit De Corp., 769 F.2d 919, 926 (2d Cir.1985).
 
 
 35
 Plaintiffs submitted an affidavit stating that they intended to seek discovery "from [the Navy], from past and present state, local and regional officials, and from other third-party witnesses who have had communications with the Navy and [congressional] representatives about the New York homeport." 659 F.Supp. at 684. They stated that discovery would reveal that the Navy had disclosed that it was going to deploy nuclear weapons at the Homeport in unclassified statements. Yet, even if plaintiffs had obtained what they stated would be uncovered, the information would have been insufficient to defeat summary judgment.
 
 
 36
 To defeat the motion for summary judgment, appellants would have had to produce information confirming that the Navy had officially stated that it would deploy nuclear weapons at the Homeport. Any unofficial statements allegedly made by the Navy to third parties which were not a matter of public record would either be classified and given only to individuals with proper security clearance or unauthorized "leaks." Because official statements by definition would therefore have to have been matters of public record, the discovery plaintiffs sought would not reveal anything new requiring denial of summary judgment. Insofar as the effort was to uncover official disclosures, appellants made no showing that they did not have reasonable access to such disclosures prior to bringing their Rule 56(f) request. The public nature of any proposal to deploy nuclear weapons would have made it easily discoverable prior to appellants' request for additional discovery. Thus, the Rule 56(f) request was properly denied.
 
 III. The Internal Decision Claim
 
 37
 The internal decision claim alleges that the Navy violated the first requirement of NEPA § 102(2)(C)--that it inject environmental considerations into its internal decisionmaking process. See Catholic Action, 454 U.S. at 143, 102 S.Ct. at 201. This claim was made in a supplemental amended complaint, after appellants "discovered" new evidence that allegedly supports it. The new evidence--found in a classified report issued by the United States General Accounting Office (GAO Report)--was prepared at the request of New York City Congressman Weiss, who holds the proper security clearance to read it. Though not a party to this suit, Congressman Weiss has been an active opponent of the New York Harbor Homeport proposal and brought the existence of the report to appellants' attention. Although they have never seen the GAO Report, appellants state that it contains information that the Navy violated NEPA by failing adequately to consider in its internal decisionmaking process the environmental impacts of certain "classified aspects" of the Homeport proposal. This allegation is based upon statements made by Congressman Weiss that suggest that the GAO Report reflects that insufficient consideration was given by the Navy to the environmental impact of the classified aspects of the Homeport.
 
 
 38
 This claim was dismissed by the trial court's order of May 1, 1989 for lack of subject matter jurisdiction. The Supreme Court over a century ago explained in Totten v. United States that public policy prevents the maintenance of such a lawsuit which, were it tried, would "inevitably lead to the disclosure" of confidential matters. 92 U.S. 105, 107, 23 L.Ed. 605 (1875). Relying on the Totten "national security" doctrine and the reference made to Totten in Catholic Action, 454 U.S. at 146-47, 102 S.Ct. at 203-04, the district court believed it lacked jurisdiction to entertain the internal decision claim. The district judge reasoned that a judgment in appellants' favor necessarily would imply that nuclear weapons were being deployed, thus compromising the Navy's policy of strategic ambiguity.
 
 
 39
 We agree with this result, but think that the issue need not be resolved on whether judicial proceedings would necessarily divulge classified information to the public. Rather, a careful reading of Catholic Action teaches that though NEPA requires an agency to consider environmental considerations--even when disclosure is not permitted--an internal EIS need not be prepared when a project is simply contemplated. It is only when such a project is proposed--though not publicly announced--that the Navy is required to prepare an internal EIS. 454 U.S. at 146, 102 S.Ct. at 203. In Catholic Action the Court stated that it cannot be established that the Navy has proposed to deploy nuclear weapons so long as it relies on a policy of neither confirming nor denying such deployment. Id. In this case, too, appellants cannot establish that the Navy has proposed to deploy nuclear weapons at the Homeport until the Navy officially discloses such a proposal. As discussed above, no official disclosure has been made.
 
 
 40
 Appellants claim that they can demonstrate through information contained in the GAO Report that the Navy actually proposed to deploy nuclear weapons. Nevertheless, though this sort of classified information may occasionally be admissible as evidence--and even sometimes the subject of specially constructed litigation--plaintiff still has the burden of establishing a prima facie case before litigation ensues. To allow the appellants to state a prima facie case that the Navy has proposed a deployment of nuclear weapons by giving them access to a classified report would defeat the established equilibrium between the military's need for secrecy and the public's right to have access to official information. 454 U.S. at 145, 102 S.Ct. at 202-03.
 
 
 41
 Further, it would permit future plaintiffs to force the military to disclose classified documents upon the assertion of a plaintiff's reasonable belief that disclosure will establish that the military has proposed an action that Congress says may be kept secret. Such bootstrapping cannot be said to have been contemplated under NEPA, particularly when it is remembered that NEPA's mandates are "essentially procedural," Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc., 435 U.S. 519, 558, 98 S.Ct. 1197, 1219, 55 L.Ed.2d 460 (1978), and do not require that environmental concerns be preferred to other appropriate considerations, Strycker's Bay Neighborhood Council v. Karlen, 444 U.S. 223, 227, 100 S.Ct. 497, 499-500, 62 L.Ed.2d 433 (1980). Clearly, national security interests are among those other considerations.CONCLUSION
 
 
 42
 We hold therefore that whether the Navy has complied "to the fullest extent possible" with NEPA is not subject to judicial scrutiny in this case. See 454 U.S. at 146, 102 S.Ct. at 203. Our ruling, though, does not mean the Navy proceeded unchecked. It was still bound to consider environmental consequences in any Homeport proposal. And, while not subject to scrutiny by the judicial branch, it was subject to Congress' oversight when that body, having access to the classified information which plaintiffs seek in this case, decided whether or not to approve the Homeport proposal.
 
 
 43
 Accordingly, for the reasons stated the judgment is affirmed.
 
 
 
 *
 Honorable Milton Pollack, United States District Judge for the Southern District of New York, sitting by designation
 
 
 [1]
 Executive Order No. 12065 was replaced by Executive Order No. 12356 on April 2, 1982, 3 C.F.R. (1982 Compilation) at 166-78. The relevant provisions of EO 12356 have the same guidelines for classifying material in the interests of national security as did EO 12065